IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30622
_____


UNITED STATES OF AMERICA

                              Plaintiff-Appellee,

        v.

TIMOTHY PATRICK LOONEY

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(1:97-CR-54-2-G-G)
_____

April 7, 1999

Before KING, Chief Judge, and REYNALDO G. GARZA and JOLLY,
Circuit Judges.

PER CURIAM:[*]

     Defendant-appellant Timothy Patrick Looney appeals his

sentence, challenging the district court's decision to depart

upward from the sentencing guidelines to a term of sixty months

of imprisonment, the district court's loss calculation, and the

district court's failure to decrease his base offense level for

acceptance of responsibility.  We affirm.

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL AND PROCEDURAL HISTORY

In November 1992, defendant-appellant Timothy Patrick Looney formed a company called Paramount Financial Group. From 1993 until 1996, Looney, who represented himself as a financial advisor, convinced clients to invest in nonexistent stocks and bonds and then converted the money invested to his own use. His scheme was to mail clients a letter entitled "Investment Opportunity," in which he advertised that, for less than face value, he could purchase city municipal bonds that would mature sooner than ordinary bonds. Once the nonexistent bonds "matured," Looney would normally pay a portion of the interest to the client and then advise the client of the opportunity to purchase other municipal bonds, effectively rolling over the client's perceived principal and interest into another nonexistent bond. Looney would also mail false income tax statements to his clients that listed their supposed interest earnings. Fourteen victims of this scheme suffered losses totaling $1,171,600.40. Many of the victims were long-time friends or family members of Looney.

Looney surrendered voluntarily to the F.B.I. on September 23, 1996. On October 3, 1996, he was charged by bill of information with one count of mail fraud in violation of 18 U.S.C. § 1341. On October 17, 1996, Looney pleaded guilty as charged. The presentence report (PSR) calculated Looney's imprisonment range to be twenty-seven to thirty-three months based on a total offense level of eighteen and a criminal history

2

category of I.  On January 28, 1997, the district judge gave notice that he was considering an upward departure from the sentencing guidelines range.

At the sentencing hearing on January 30, 1997, the district court sentenced Looney to the statutory maximum of sixty months of imprisonment and three years of supervised release, and ordered Looney to pay a total of $1,048,329.56 as restitution to his victims and a $100 special assessment.  The district court stated the following reasons for upwardly departing from the guidelines range:  (1) that the offense caused reasonably foreseeable physical or psychological harm or severe emotional trauma; (2) that the offense involved the knowing endangerment of the solvency of one or more victims; (3) that the defendant so abused a position of trust as to warrant an upward departure beyond that already afforded by United States Sentencing Guideline (U.S.S.G.) § 3B1.3; and (4) that the repetitiveness, intricacy, sophistication, and length of the defendant's scheme were substantially in excess of the ordinary mail fraud scheme, and the level of malfeasance was not accounted for adequately by the enhancement for "more than minimal planning" provided by U.S.S.G. § 2F1.1(b)(2)(A).

On January 28, 1998, Looney filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, in which he claimed that his attorney had rendered ineffective assistance by failing to appeal his sentence.  On April 15, 1998, the district court granted Looney an out-of-time appeal.  On June 9,

3

1998, the district court reinstated the judgment on the docket, setting the time for filing a notice of appeal to run from that date. Looney filed a notice of appeal on June 12, 1998.

## II. DISCUSSION

On appeal, Looney challenges the district court's decision to depart upward from the applicable guidelines range, arguing that the factors relied on by the district court do not justify departure, and that, even if the district court relied on acceptable factors, the upward departure is unreasonable. Looney also challenges the district court's calculation of the loss attributable to his scheme and the district court's failure to decrease his base offense level by three for his acceptance of responsibility. We examine each contention in turn.

### A. Upward Departure

A district court has discretion to depart from the guidelines if it finds that an aggravating circumstance exists that was not adequately taken into consideration by the Sentencing Commission. See 18 U.S.C. § 3553(b). A district court's decision to depart is reviewed for abuse of discretion. See Koon v. United States, 116 S. Ct. 2035, 2036-48 (1996); United States v. Nevels, 160 F.3d 226, 229 (5th Cir. 1998). So long as the judge provides acceptable reasons for departure and the degree of the departure is reasonable, the district court has not abused its discretion. See Nevels, 160 F.3d at 229-30.

However, if the defendant fails to object to the upward departure before the district court, we review the departure for

4

plain error. See United States v. Ravitch, 128 F.3d 865, 869
(5th Cir. 1997). Here, Looney did not object to the district
court's upward departure, and thus plain error review applies.
Under Federal Rule of Criminal Procedure 52(b), this court may
correct forfeited errors only where the appellant demonstrates
(1) that there is an error, (2) that the error is plain, and (3)
that the error affects the appellant's substantial rights. See
United States v. Olano, 507 U.S. 725, 732-35 (1993); Ravitch, 128
F.3d at 869. Even if these factors are met, this court will
correct a forfeited error only if the error "seriously affect[s]
the fairness, integrity or public reputation of judicial
proceedings." Olano, 507 U.S. at 736 (internal quotation marks
omitted) (alteration in original); see Ravitch, 128 F.3d at 869.
Therefore, if the district court could reinstate the same
sentence if the case were remanded, we will uphold the
defendant's sentence even though the district court's stated
reasons for departure constitute a mistaken application of the
guidelines. See Ravitch, 128 F.3d at 869.

When considering whether to depart from the applicable
guidelines range, the Supreme Court has set forth the following
questions for sentencing courts to consider:

> 1) What features of this case, potentially, take it outside
> the Guidelines' "heartland" and make of it a special, or
> unusual, case?
>
> 2) Has the Commission forbidden departures based on those
> features?
>
> 3) If not, has the Commission encouraged departures based on
> those features?

5

4) If not, has the Commission discouraged departures based on those features?

*Koon*, 116 S. Ct. at 2045 (internal quotation marks omitted). The sentencing court may not use forbidden factors as a basis for departure. *See* *id.* An encouraged factor may provide the basis for departure if the applicable guideline does not already take it into account. *See* *id.* Finally, "[i]f the . . . factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.*

With these principles in mind, we now turn to the district court's stated reasons for departure: (1) that the offense caused reasonably foreseeable physical or psychological harm, or severe emotional trauma; (2) that the offense involved a knowing endangerment of the solvency of one or more of the victims; (3) that the defendant so abused a position of trust as to warrant an upward departure beyond that already afforded by U.S.S.G. § 3B1.3; and (4) that the repetitiveness, intricacy, sophistication, and length of the defendant's scheme were substantially in excess of the typical crime of mail fraud, and the malfeasance was not accounted for by the enhancement for more than minimal planning under U.S.S.G. § 2F1.1. The district court found that the Sentencing Commission had neither forbidden nor discouraged departure on the basis of any of the articulated factors, and that the Sentencing Commission in fact encouraged

departure on the basis of the first two stated factors.  See U.S.
SENTENCING GUIDELINES MANUAL § 2F1.1 application note 10 (1997).  We
address each of the factors below.

### (1) Upward Departure for Psychological Harm

Relying on United States v. Wells, 101 F.3d 370, 374 (5th
Cir. 1996), and United States v. Stouffer, 986 F.2d 916, 928 n.16
(5th Cir. 1983), the district court found that Looney's conduct
resulted in "extreme personal victimization" and had a
"devastating impact" on his victims, many of whom were family
members and long-time friends and acquaintances.

Letters from the victims indicate that many victims
experienced outrage, anger, anxiety, grief, inability to sleep,
inability to concentrate, depression, repeated memories of the
crime, and shock that someone that they trusted and thought they
knew could betray them in such a manner.  The victims included
Looney's cousin, wife, long-time acquaintances and friends, and
several elderly victims.  We cannot say that the district court's
decision to depart upward on this basis constitutes plain error.
See Wells, 101 F.3d at 373-74 (finding upward departure not
erroneous under abuse of discretion review); United States v.
Anderson, 5 F.3d 795, 805 (5th Cir. 1993) (same); Stouffer, 986
F.2d at 927-28 (same); U.S. SENTENCING GUIDELINES MANUAL §§ 2F1.1
application note 10, 5K2.3.  But cf. United States v. Pelkey, 29
F.3d 11, 15-16 (1st Cir. 1994) (concluding, under "deferential"
review, that departure for psychological injury was improper even

7

though defrauded victims included long-time friends, acquaintances, and some elderly persons).[1]

**(2) Upward Departure for Knowing Endangerment of Solvency**

U.S.S.G. § 2F1.1(f) states that an upward departure may be appropriate where "the offense involved the knowing endangerment of the solvency of one or more victims."  The district court found that at least one of Looney's victims had been threatened with insolvency.  Clyde Brown, who was eighty-three years old, invested "all [he and his wife] had saved in . . . thirty years of marriage."  In his victim impact statement, he stated that his only remaining sources of income were Social Security and retirement benefits from his employer.  His retirement benefits expired in 1997.  We conclude that the district court did not plainly err in upwardly departing on this basis.  Looney undoubtedly knew that there was a substantial risk that his victims would face insolvency when he accepted the life savings of elderly victims like Clyde Brown who clearly would not be able to work in the event that they lost their money.  See United States v. Ross, 77 F.3d 1525, 1551 (7th Cir. 1996) (finding extreme risk of victim insolvency justified upward departure where victims were students with loan debt).  Thus, the district court did not commit plain error in concluding that Looney's

---

[1] We distinguish United States v. Lara, 975 F.2d 1120, 1127-28 (5th Cir. 1992), on its facts.  There we found that conclusory assertions would not support an upward departure.  See id. at 1128. Here, the district court relied on more than mere conclusory assertions.

8

offense involved the "knowing endangerment of the solvency" of at least one victim.[2]

### (3) Upward Departure for Abuse of Position of Trust

The guidelines already provide for sentencing enhancements based on an abuse of a position of trust. See U.S. SENTENCING GUIDELINES MANUAL § 3B1.3. The district court found, however, that an upward departure was warranted beyond that provided for by U.S.S.G. § 3B1.3. Departure on this basis is not specifically discouraged or forbidden by the guidelines. Because the factor is already taken into account by the guidelines, however, the district court may depart only if the case is different than the ordinary case where the factor is present. See Koon, 116 S. Ct. at 2045.

Looney objected to the PSR's inclusion of a two-level increase for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. He did not, however, object to the district court's use of this factor as a basis for upward departure. We conclude

---

[2] United States v. Pelkey, 29 F.3d 11, 15 (1st Cir. 1994), relied upon by Looney in support of his position, is distinguishable. There, the court decided that an unlisted factor relied upon by the district court to justify an upward departure--the victims' "failure to have a secure financial future"--did not rise to the level of seriousness of the other factors actually listed in application note 10 of U.S.S.G. § 2F1.1. See id. The court therefore refused to affirm the district court's upward departure on that ground. See id. As the Pelkey court noted, however, its decision was based on the law as it existed prior to the addition of "the knowing endangerment of the solvency of one or more victims" to the list set forth in application note 10. See id. at 15 n.5. Therefore, Pelkey affords no guidance in determining whether Looney's conduct constitutes the "knowing endangerment of the solvency of one or more" of his victims.

9

that, whether the district court's departure is reviewed under abuse of discretion or plain error review, the result is the same--the district court did not err.

The district court found that Looney occupied a position of trust because he acted as an investment advisor/broker for his victims. In concluding that upward departure was warranted because Looney's abuse of his position of trust was not adequately accounted for by the enhancement provided for by U.S.S.G. § 3B1.3, the court relied upon United States v. Kay, 83 F.3d 98 (5th Cir. 1996). There, we held that the district court did not err in departing upward for the defendant's abuse of a position of trust where the defendant made fraudulent representations in setting up a checking account, embezzled funds (including some funds from the trusts of minor children) by forging her mother's signature, deposited the embezzled funds into the checking account, and ultimately converted the proceeds to her own personal account. See id. at 100, 102-03. In the case at bar, Looney abused his position of trust as an investment advisor/broker by convincing friends, relatives, and the elderly to entrust their savings to him, whereupon he converted the proceeds to his own use, all the while making it appear as though he was engaged in a legitimate business by sending out false interest statements and letters to convince his clients to roll

over their "profits" to new investments. We conclude that the district court did not err by departing upward on this basis.[3]

### (4) Upward Departure for Complexity of Scheme

Finally, the district court justified its upward departure on the ground that the repetitiveness, intricacy, sophistication, and duration of the scheme was in excess of what is involved in the ordinary crime of mail fraud and is not adequately accounted for by the enhancement for "more than minimal planning" contained in U.S.S.G. § 2F1.1(b)(2)(A). In so doing, the district court again relied on United States v. Kay.

Looney argues that the district court erred because his was a "simple, uncomplicated scheme." We disagree. To avoid detection, Looney concocted sophisticated methods to make his bond business appear legitimate, including sending false interest statements to his victims to inform them, for tax purposes, of the "interest" they had supposedly earned. Furthermore, in an effort to keep the scheme rolling, he sent letters in which he convinced his victims to roll over their principal and "interest" toward the purchase of new bonds. As the district court saw it,

> Nothing so intricate has been in this room in a long time,
> where he would get money from one person and send out a

---

[3] The district court also relied on United States v. Queen, 4 F.3d 925 (10th Cir. 1993). Looney correctly notes that Queen is not entirely applicable because there the district court did not depart upward for abuse of a position of trust beyond the two-level enhancement already provided for by U.S.S.G. § 3B1.3. However, it appears that the district court relied on this case only for the proposition that an investment advisor/broker is a position of trust. In any event, the district court also correctly relied on United States v. Kay, and therefore its upward departure is well-supported.

11

> check presumably for interest earned on nonexistent bonds,
> keep track of what date that letter went out, and then at
> the next entry's due date send another check for the
> interest that had earned and offered to roll the matter over
> to a new bond that he had found.  It was a sophisticated
> piece of business for which the guidelines don't adequately
> provide.

As the Supreme Court has noted, a district court's understanding of the ordinariness or unusualness of a particular case deserves deference because district courts "have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do."  Koon, 116 S. Ct. at 2047.  We conclude that the district court did not plainly err in adjusting upward on this basis.  See Kay, 83 F.3d at 101-02.

Looney next argues that even if the reasons given by the sentencing court for upward departure are valid, the extent of the departure was unreasonable.  Looney contends that the extent of the departure was unreasonable because he turned himself in and took responsibility for his actions.  These factors are better addressed to whether the district court erred by failing to decrease his base offense level for acceptance of responsibility, an issue we address below.  We conclude that the district court's decision to impose the statutory maximum sentence was not unreasonable because the court's expressed reasons were valid and the sentence was not disproportionate to Looney's conduct.  See Nevels, 160 F.3d at 229-30.

### B.  District Court's Loss Calculation

Looney next argues that the district court incorrectly calculated the loss attributable to his scheme for purposes of U.S.S.G. § 2F1.1(b)(1) by considering not only the amount of loss owed in restitution, $1,048,329.56, but also the $1,190,404.00 which Looney took from other victims but later repaid. Looney never objected in front of the district court on this basis, and his arguments lack merit. The amount of loss for purposes of U.S.S.G. § 2F1.1(b)(1) "is the dollar amount placed at risk by a defendant's fraudulent scheme or artifice." United States v. Oates, 122 F.3d 222, 225 (5th Cir. 1997); see United States v. Brown, 7 F.3d 1155, 1159 (5th Cir. 1993) ("Where a defendant attempts to pass altered or forged checks, the face value of the checks reflects the intended loss, even if the money is recovered or returned."); United States v. Wimbish, 980 F.2d 312, 315-16 (5th Cir. 1992); cf. United States v. Cockerham, 919 F.2d 286, 289 (5th Cir. 1990) (concluding that, under U.S.S.G. § 2B1.1, loss "includes the value of all property taken, even that recovered or returned"). Thus, the district court did not err in calculating the defendant's base offense level to include a twelve point increase pursuant to U.S.S.G. § 2F1.1(b)(1)(M).

## C. Acceptance of Responsibility

Finally, Looney argues that the district court erred by failing to decrease his base offense level three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In support of this contention, Looney argues that he voluntarily turned himself in, cooperated with law enforcement, and pleaded

13

guilty as charged.  He contends that the district court lacked discretion to avoid reducing his sentence for acceptance of responsibility.  However, it is only once the sentencing court concludes that the defendant did in fact accept responsibility that the court must award the reduction.  See United States v. Tello, 9 F.3d 1119, 1124 (5th Cir. 1993); United States v. Surasky, 976 F.2d 242, 248 n.7 (5th Cir. 1992).

By sentencing Looney to the statutory maximum, the district court implicitly determined that Looney had not accepted responsibility.  This conclusion is reviewed "for clear error but under a standard of review even more deferential than a pure 'clearly erroneous' standard."  United States v. Gonzales, 19 F.3d 982, 983 (5th Cir. 1994).

While there is some evidence that Looney accepted responsibility by turning himself in and pleading guilty, the victim impact statements reveal that the victims did not feel that Looney manifested any remorse for his wrongdoing.  Thus, there was evidence from which the district court could have determined that Looney had not accepted responsibility for his wrongdoing.  We cannot say that the district court clearly erred by failing to decrease Looney's base offense level for acceptance of responsibility.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

14