**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 6, 2009

Charles R. Fulbruge III
Clerk

No. 08-60172

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

KENNETH L BLOCKETT

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:06-CR-149-1

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Kenneth L. Blockett[1] ("Blockett") appeals from the district court's denial of his motion for judgment of acquittal, following his conviction on charges of conspiring to defraud the United States and making false statements to federal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Milton D. Tutwiler was convicted of conspiring to defraud the United States, theft of federal grant funds, and knowingly making false statements to federal agencies. He was sentenced to 63 months' imprisonment and appealed both his conviction and sentence. During the pendency of his appeal, he died of cancer and his appeal was dismissed. Only Blockett's appeal remains before us.

agencies. Blockett also appeals his sentence of 51 months' imprisonment. Because we find that the evidence was sufficient to convict and the sentence imposed was properly calculated, we affirm.

## FACTS AND PROCEEDINGS

In an effort to alleviate rural poverty, in the early 1990's, Congress established rural empowerment zones funded through the Department of Health and Human Services ("HHS"). The Mid-Delta Empowerment Zone Alliance ("MDEZA") was one of the programs funded by HHS to award grants for projects undertaken to revitalize the Mississippi Delta region. The Mississippi Development Authority ("MDA") holds all grant funds until MDEZA is prepared to disburse them. Once an MDEZA grant is awarded, funds are only disbursed after the grantee has submitted a "Request for Cash" which includes a detailed explanation of how the money is to be spent. If and when funds from a previous disbursement are completely accounted for, MDEZA entertains and grants additional payments from the remaining grant funds.

In 2001, the Town of Winstonville, Mississippi, (the "Town") acting through its Mayor, Milton D. Tutwiler ("Tutwiler"), applied and was approved for an economic development grant from MDEZA in the amount of $1,311,337. The grant was for the construction of a chemical plant that would produce household cleaners and provide approximately fifty jobs in the impoverished community. The Town submitted a Request for Cash to cover initial architectural engineering and related services for the construction. MDEZA granted the request and issued a check for $130,337. The Town later sought additional funds for administrative expenses in the amount of $15,000. This request was also granted. Subsequently, based on detailed cost summaries,

MDEZA approved an initial advance of $556,715 to begin building the chemical plant. Construction was to commence immediately.

In October 2001, the Town engaged Blockett Construction Associates ("Blockett Construction"), owned by Blockett, to oversee and perform construction. The Town submitted a request for payment from Blockett asserting that $556,715 of work had been completed and requested an additional $754,622. The request stated that the project had been completed. Because only $609,285 remained in the grant, payment of the requested amount was not possible.

In December 2001, the Town modified its previous request and submitted a second Request for Cash, this time seeking disbursement of the balance of the grant funds. The request included invoices from Blockett detailing the expenditure of the previous $556,715. MDEZA denied this second Request for Cash because the agency determined that it had been provided insufficient documentation to support the initial expenditure of $556,715. Shortly thereafter, the MDEZA project manager visited the site and found that, despite representations that the chemical plant was completed, the work was only beginning. The project manager observed a work crew pouring a slab of concrete on the site but nothing else had been constructed.

After MDEZA denied the request, Tutwiler and Blockett attempted to access the grant funds by applying directly to MDA. Required to provide the same type of supporting documentation MDEZA had demanded, Tutwiler and Blockett again submitted invoices stating that the project had been completed. Blockett later submitted other documentation but modified the completion representation to indicate that the project was only fifty-four percent complete.

3

These documents stated that $609,285—the grant balance—was needed to finish the project. As MDEZA had done, MDA denied this request because the documentation provided was insufficient to show that the money previously disbursed had been spent properly.

MDA had numerous meetings with Tutwiler and Blockett in an attempt to remedy the documentation deficiency. At one such meeting, Blockett submitted a package of materials again purporting to justify the expenditures from the initial disbursement. Many of these documents were different from those previously submitted. Notably, two Blockett Construction invoices claimed that J.B. Taylor Electrical Company ("J.B. Taylor Electrical") had been paid a total of $42,509.95 for electrical work.

In August 2002, becoming suspicious of the discrepancies in documentation and the lack of progress observed by the project manager when visiting the site, Special Agent Rick Moody ("Moody") of the State Auditor's Office was assigned to investigate. Moody visited the construction site and found that a concrete slab, some metal framing, and a temporary light pole was the sum total of the project's progress.

Moody began reviewing the J.B. Taylor Electrical invoices and became suspicious that these were false documents. Attempting to verify these invoices, Moody discovered that no such company existed but was able to locate an individual by the name of Jerry Taylor ("Taylor"). Moody met with Taylor and found that he and Tutwiler had known each other for forty years and had been gambling cohorts for much of that time. Taylor informed Moody that he was not a licensed electrician and had never been to the construction site, done any electrical work for the chemical building, or been hired to do any work in the

future. Upon being shown the J.B. Taylor Electrical invoices, Taylor stated that the invoices were not his though some of his contact information was listed on the document. Taylor also disclosed that he had been separately contacted by both Tutwiler and Blockett, presented with the J.B. Taylor Electrical invoices, informed that an investigation was under way, and told to represent to the investigator that the invoices were advances for work at the chemical plant.

While the invoices were fictitious, the payments to Taylor were real. The money had been paid to cover Tutwiler's gambling debts. The two friends had arranged for Tutwiler to use Taylor's American Express card to obtain gift certificates at a Hollywood Casino which would then be cashed at the casino's lobby. This allowed Tutwiler to gamble without using his own credit cards. Tutwiler would then pay off Taylor's American Express card. The invoices indicating Blockett Construction payments to J. B. Taylor Electrical matched payments—both in date and amount—made to Taylor's credit card account.

Further investigation revealed that other invoices submitted by Blockett and Tutwiler were fabricated. After interviewing the sub-contractors involved, Moody found that only a fraction of the work Blockett claimed was ever paid or performed. Grant money deposited in Blockett's construction account was also traced to personal expenses and payments to family members.

Based on the results of the investigation, on October 24, 2006, a federal grand jury indicted Blockett and Tutwiler on six counts. Count one charged Blockett and Tutwiler with conspiring to defraud the United States in violation of 18 U.S.C. § 371, count two charged them with theft of federal grant funds in violation of 18 U.S.C. §§ 2 and 666(a)(1)(A), and counts three, four, five, and six

charged the two with knowingly making false statements to federal agencies in violation of 18 U.S.C. §§ 2 and 1001.

Trial began in May 2007. Both Blockett and Tutwiler moved for judgment of acquittal at the close of the government's evidence, arguing that the government had adduced insufficient evidence to convict. The motions were renewed at the end of the trial. The district court denied all motions.

The jury returned a verdict finding Blockett guilty on counts one, four, five, and six—conspiring to defraud the United States, and knowingly making false statements to federal agencies. At sentencing, the court held that Blockett was liable for attempting to defraud the government of the entire grant amount—$1,311,337. The judge determined that Blockett misappropriated the initial $556,715 payment from MDEZA and that the $754,622 figure Blockett and Tutwiler attempted to draw from the grant was the intended loss amount. The total grant amount increased Blockett's offense level by sixteen points. An additional two point enhancement was assessed for Blockett's attempt to influence Taylor's testimony during the investigation.

Blockett was sentenced to 51 months for each of the four counts, to be served concurrently. He was also ordered to pay restitution of $556,715. A special assessment of $400 was also imposed. He now appeals the district court's denial of his motions for acquittal, arguing that: (1) the evidence was insufficient to support the jury verdict and (2) the district court miscalculated the appropriate intended loss amount for sentencing.

## STANDARD OF REVIEW

We have long held that "[t]he standard of review in assessing a challenge to the sufficiency of the evidence in a criminal case is whether a 'reasonable trier

of fact could have found that the evidence established guilt beyond a reasonable doubt.'" *United States v. Mergerson*, 4 F.3d 337, 341 (5th Cir. 1993) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)). To determine whether the evidence was sufficient to convict, "a court views all evidence and all reasonable inferences drawn from it in the light most favorable to the government." *Id*. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999).

In reviewing a district court's loss calculation, "[f]actual determinations regarding loss amount for guideline calculation purposes are reviewed for clear error." *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009). Furthermore, "[a] district court's determination of the amount of loss caused by fraud is given wide latitude." *United States v. Brewer*, 60 F.3d 1142, 1145 (5th Cir. 1995).

## DISCUSSION

### I.    Sufficiency of the evidence

Blockett argues that the evidence against him was insufficient to convict him of conspiring to defraud the United States and knowingly making false statements to federal agencies because he lacked the requisite intent to commit these offenses. In particular, Blockett asserts that the government misread the documents presented to MDEZA and MDA, arguing that the requests for payment did not make claims about the current status of the project—indicating that the chemical plant had been completed—but were actually intended to reflect the expenditures needed for future services. With respect to the government's evidence that the various invoices submitted by Blockett and

7

Tutwiler were fabricated, Blockett admits to having created these documents but asserts that he did so not to defraud the government but to aid minority subcontractors who often lack the resources to produce paperwork. The subcontractors, he asserts, agreed with the amounts shown on the invoices. He further maintains that he was introduced to Taylor by Tutwiler and simply relied on Tutwiler's representations that Taylor was an electrical and mechanical contractor. The payments made to Taylor's American Express card, Blockett argues, were requests for payment made by Taylor himself who represented that he needed the cash to commence work on the project. He further maintains that the project was not completed because of an unrelated suit by an aggrieved contractor which resulted in an injunction that halted the project.

To establish conspiracy to defraud the United States in violation of 18 U.S.C. § 371, "there must be proof (1) of an agreement among two or more persons (2) to accomplish something that constitutes an offense against the United States, and (3) an overt act by one of them in furtherance of the conspiracy." *United States v. Lichenstein*, 610 F.2d 1272, 1276 (5th Cir. 1980). Furthermore, "the government must prove the requisite intent to commit the substantive offense." *United States v. Charroux*, 3 F.3d 827, 831 n.4 (5th Cir. 1993) (internal quotation and citation omitted). A violation under 18 U.S.C. §§ 2 and 1001 for knowingly making false statements to federal agencies is established by showing: "(1) a statement, that is (2) false (3) and material, (4) made with the requisite specific intent, (5) within the purview of government agency jurisdiction." *Lichenstein*, 610 F.2d at 1276. As we have long held, "18 U.S.C. § 1001 is designed to protect federal funds and functions from fraudulent

8

interference. . . . [T]he requirement that defendant intend to deceive by making a statement which he knows is false serves to insure against punishing one who has committed no culpable act." *United States v. Montemayor*, 712 F.2d 104, 107–108 (5th Cir. 1983) (quotation omitted). "[T]he evidence need not . . . conclusively demonstrate a conspirator's state of mind; '[i]t suffices to show facts and circumstances from which the jury reasonably could infer that [a conspirator] knew her conduct was unauthorized and illegal.'" *United States v. Hopkins*, 916 F.2d 207, 213 (5th Cir. 1990) (alterations in original) (quoting *United States v. Bordelon*, 871 F.2d 491, 494 (5th Cir. 1989)).

Blockett's challenge to the sufficiency of the evidence fails. The jury had ample evidence from which to reasonably determine that Blockett knew his conduct was illegal and undertook the scheme with the specific intent to defraud the government. Trial testimony showed that Blockett and Tutwiler embarked on a fraudulent scheme to use a government development grant for their own purposes. While Blockett was not initially involved when Tutwiler secured the grant, the grant disbursements were transferred into his construction account. Blockett submitted documents stating that the building was completed, or at least half finished, when little to no construction had been performed. The sub-contractors whose invoices Blockett created and submitted to MDEZA and MDA testified that they had only performed a fraction of the work claimed by Blockett, that the invoices were altered after being signed, and that they had not been hired to perform future work on the project. Further, Taylor testified that Blockett attempted to influence his testimony and persuade him to lie when the project came under investigation. The evidence also showed that Blockett cashed thousands of dollars in checks out of his Blockett Construction account,

gave the money to family members who fraudulently claimed to work on the project, and made car payments to various dealerships with project funds.

Because "[w]e accept all credibility choices that tend to support the jury's verdict," *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991), it is clear that a reasonable jury could conclude that Blockett intended to defraud the government when he engaged in these activities. Furthermore, "juries are free to choose among all reasonable constructions of the evidence." *Charroux*, 3 F.3d at 831 (internal quotation omitted). Thus, the argument on which Blockett relies most heavily—that the government misunderstood the documents submitted—also fails. Even if the documents could be read as projections of future expenditures rather than claims for past work completed, the jury was free to choose between these two theories, especially when the latter was bolstered by extensive witness testimony and documentary evidence. The jury had ample evidence on which to base its verdict.

## II.   Sentencing calculation

Blockett argues that the district court improperly calculated the intended loss amount—$754,622—placed in danger by Blockett's fraud because he asserts that this figure included funds in use before Blockett became involved in the project. Blockett maintains that the following amounts, totaling $757,052, should not have been taken into consideration: (1) the initial Request for Cash in the amount of $130,337 to cover architectural engineering and related services, (2) an additional $15,000 disbursement for administrative expenses, and (3) the initial advance of $556,715 to begin construction. Because these three amounts approximate the figure used at sentencing, Blockett argues that these are the funds upon which the district court must have based its decision.

A district court's loss calculation in fraud cases is given "wide latitude." *Brewer*, 60 F.3d at 1145. In determining the loss amount, "we have found it proper to calculate loss based on the risk engendered by the defendant's criminal conduct, even where the actual loss was lower." *Id.* (upholding the district court's sentencing determination of the loss amount as the full amount of the loan obtained through fraud from the governmental agency even though the actual loss incurred was less than half that amount); *see also United States v. Wheeler*, 79 Fed. App'x. 656, 664 (5th Cir. 2003) (unpublished) (affirming the district court's loss calculation for sentencing based on the loss defendants attempted to inflict through their fraudulent misrepresentations); *United States v. Looney*, 178 F.3d 1291, *5 (5th Cir. 1999) (unpublished) (affirming the district court's loss determination at sentencing where the calculated loss included the amount owed in restitution as well as the amount defendant took from the victims but later returned).

Blockett's asserted calculation is not borne out by the record. There is no indication that the district court added up various numbers to reach roughly $757,000. On the contrary, the district court stated that the $754,622 amount was based on the additional request for disbursement made by Blockett. The district court ordered restitution in the amount of $556,715—an amount to which Blockett did not object at sentencing and does not challenge now—and specifically noted that Blockett, having been found guilty of the conspiracy count, was also found guilty of the overt act in furtherance of that conspiracy of making the additional $754,622 request for cash from the federal agencies.

Furthermore, in making the loss amount determination, the district court relied on the jury verdict as well as the presentence report's findings of fact.

> Generally, a [presentence report] bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. The defendant bears the burden of demonstrating that the [presentence report] is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the [presentence report] and adopt it.

*Ollison*, 555 F.3d at 164 (internal quotations omitted). Blockett did not object to the district court's reliance on the presentence report and its findings of fact and does not raise such an objection here. The presentence report specifically states that "[t]he loss amount for guideline calculation purposes will be $1,311,337. Of the afore-mentioned loss amount, $556,715 represents the restitution amount and $754,622 represents the intended loss in this case."

In addition, any arguments that attack expenditures or funds disbursed before the attempt to secure the additional $754,622 are unavailing because they do not change the sentence calculation. Even if Blockett should not have been held responsible for the $130,337 architectural engineering expense and the $15,000 in administrative expenses, attempts to exclude these amounts fail for two reasons. First, these funds made up no part of the $754,622 claim Blockett attempted to secure from MDEZA and MDA—the only figure Blockett challenges. Second, even if we were to exclude these amounts from the total offense level calculation, Blockett's offense level would remain unchanged. U.S.S.G. § 2B1.1. The district court therefore did not commit clear error in failing to subtract out these amounts.

Ultimately, even though Blockett was unsuccessful in securing the second disbursement, the district court did not err in holding him responsible for the entire $1.3 million grant because this is the amount placed at "risk . . . by [Blockett's] criminal conduct." *Brewer*, 60 F.3d at 1145. The $556,715 initial

disbursement deposited in Blockett's account and misappropriated by Blockett and Tutwiler in addition to the $754,622 in the second request for cash is the grant total upon which the district court based its sentencing decision. A review of the record, the presentence report, and applicable caselaw reveals that the district court did not commit clear error in its loss calculation.

## CONCLUSION

The judgment of the district court is AFFIRMED.