United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2003

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60830

_____

United States of America

Plaintiff - Appellee,

versus

Harold J. Wheeler; Lawyer Wheeler, Jr.

Defendants - Appellants.

Appeals from the United States District Court
For the Northern District of Mississippi
4:01-CR-109-1-B

Before REAVLEY, JONES and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Harold J. Wheeler and Lawyer Wheeler, Jr. appeal their convictions for knowingly making materially false statements or representations to the Farm Service Agency ("FSA"), an arm of the United States Department of Agriculture, in violation of 18 U.S.C. § 1001(a)(2). Specifically, the jury found that the Wheelers falsely stated in their 1998 applications for disaster relief that

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

they had completely planted their cotton crop on May 25, 1998, and May 26, 1998. Harold J. Wheeler was sentenced to 18 months imprisonment and fined $20,000. Lawyer Wheeler, Jr. was sentenced to 12 months and one day imprisonment and fined $5,000. Finding no error, we affirm the convictions.

## I.  BACKGROUND

Harold Wheeler, managing partner of CMC Farms, owned and farmed several tracts of land in Leflore County and Carroll County, Mississippi. His brother, Lawyer Wheeler, was employed by CMC Farms and also rented and farmed his own tract of land in Sunflower County, Mississippi. In the fall of 1997, the Wheelers decided to plant wheat on their respective tracts of land. The wheat came to harvest in late May 1998 and a local trucking firm delivered the wheat to grain elevators beginning May 23, 1998. The final delivery occurred on June 12, 1998.

The Wheelers then decided to follow their wheat crop with cotton. Inventory receipts from Lewis Seed & Feed establish that Lawyer Wheeler picked up the first shipment of thirty-three bags of cotton seed on June 3, 1998. Receipts also establish that Lawyer Wheeler or another representative of CMC Farms picked up additional shipments of cotton seed on June 4, 11, and 15, 1998. Following the harvest, the Wheeler tracts yielded a mere 70 bales from more than 1,000 acres of cotton planted.

-2-

The Wheelers held crop insurance on their 1998 cotton crop through Rural Community Insurance Services. Based on information provided by Lawyer Wheeler, insurance agent Jimmy Goss filled out the crop insurance acreage reports, which included final planting dates ranging from May 15, 1998, to May 23, 1998. According to their applications, the Wheelers qualified for full coverage.

The FSA's Crop Loss Disaster Assistance Program provides compensation to farmers for loss associated with a particular farming period. Congress passed the disaster program covering the 1998 growing season in early 1999. To qualify for full coverage under the disaster program, cotton must have been completely planted by May 25, 1998. For every day past the 25th that planting continues, the disaster benefits decrease.[1]

On April 5, 1999, Harold Wheeler met with Brenda Ricks, an employee of the Leflore County FSA office, to complete his disaster application for non-irrigated acres. Based on Harold Wheeler's answers to her questions, Ricks noted that the planting date for CMC Farms was May 25, 1998. Wheeler returned to the Leflore County FSA office on May 12, 1999, to complete the same

_____

[1] For crops planted up to ten days past the final planting date, the award would be reduced 1% per day late. For crops planted between eleven and twenty-four days past the final planting date, the assigned production would be based on 10% of the payment yield, and an additional 2% would be deducted for each day (between 11 and 24 days) late. Finally, for crops planted 25 days late or more, the assigned production would be based on 50% of the payment yield. See 7 C.F.R. § 1477.110(g)(1)—(3) (2003).

-3-

disaster application for irrigated acres.  Wheeler assured Ricks that the planting date for the irrigated acres was the same as that for the non-irrigated acres, i.e., May 25, 1998.  Harold Wheeler filled out a similar application in Carroll County, but was not asked about his final planting date.

Also on April 5, 1999, Lawyer Wheeler visited the Sunflower County FSA office to complete a disaster application. Lawyer Wheeler met with Jo Muzzi, an experienced FSA office employee, who filled out the application based on his responses to certain questions.  Muzzi noted on the application that Lawyer Wheeler's planting date was May 26, 1998.

Both Harold Wheeler's and Lawyer Wheeler's disaster applications were held up for investigation by the Office of the Inspector General.  Thus, neither Wheeler brother ever received any disaster relief benefits.

On September 19, 2001, Harold and Lawyer Wheeler were indicted on six counts by a federal grand jury.  The indictments covered the allegedly materially false statements made by Harold and Lawyer Wheeler on their crop insurance acreage reports and disaster applications for Leflore County, Carroll County, and Sunflower County.

The trial was originally scheduled to begin on November 13, 2001, in Oxford, Mississippi, the seat of the Western division of the Northern District of Mississippi.  However, the trial was continued several times on motions from the defendants

-4-

and finally began on May 20, 2002, in Oxford.  Before trial, the Wheelers objected to holding the trial in the Western division and requested a transfer to the Greenville division of the Northern District, citing as reasons the convenience of the parties and the larger percentage of African-American residents.  On April 2, 2002, the district judge denied the Wheelers' request for a transfer, noting the usefulness of the more modern courtroom facilities in Oxford.  In addition, the district judge ordered a district-wide, as opposed to division-wide, venire in response to the defendants' concerns.

On May 22, 2002, three days into the trial, the defendants filed a motion to quash the jury based on the divergent percentages of African-American and farmer residents in the Northern District compared to the Greenville division.  After hearing arguments and testimony, the district judge denied the motion.

At the close of the government's case, the defendants filed motions for judgment of acquittal as to all counts.  The motion was granted as to count five against Harold Wheeler, which dealt with his disaster application in Carroll County, but denied as to the remaining counts.

At the close of the trial, defendants unsuccessfully reasserted their motion to quash the jury.  The jury returned a verdict finding Harold Wheeler guilty only as to count six, relating to his disaster application in Leflore County, and Lawyer

Wheeler guilty only as to count four, relating to his disaster application in Sunflower County. Defendants' joint motion for judgment of acquittal was denied.

Sentencing took place on September 10, 2002. Both the government and defendants objected to the presentence report. The defendants' objections to the guideline loss determination were overruled. However, the government's request for an inclusion for more than minimal planning was sustained.

## II. DISCUSSION

### A. Venue

This court reviews a district court's decision to transfer venue for abuse of discretion. United States v. Dickie, 775 F.2d 607, 609-10 (5th Cir. 1985). In addition, a "substantial ground for overturning the district court's decision" must be present. United States v. Lipscomb, 299 F.3d 303, 339 (5th Cir. 2002). Federal Rule of Criminal Procedure 18 requires the government to "prosecute an offense in a district where the offense was committed." The district court, when setting the case for trial within the district, must consider "the convenience of the defendant and the witnesses, and the prompt administration of justice." Id. However, a defendant has no constitutional right to be tried in a particular division within a district. United States v. Duncan, 919 F.2d 981, 987 (5th Cir. 1990).

The offenses at issue all occurred in Mississippi's Northern District. This case was originally set for trial in Oxford, located in the Western division of the Northern District, in compliance with Rule 18. The defendants made a motion pursuant to Rule 18, requesting an intradistrict transfer to the Greenville division, which the district court denied. To support their motion, the defendants argued that (1) the alleged criminal conduct arose from their farming activities in Leflore, Carroll, and Sunflower counties, all in the Greenville division, (2) both defendants resided in the Greenville division, (3) many of the defense witnesses resided in the Greenville division, and (4) the African-American population in the Greenville division exceeded that of the Western division.

The defendants cite Lipscomb, supra, in support of their position. Lipscomb involved the reversal of a Dallas City Council member's conspiracy and bribery convictions. The district judge in Lipscomb transferred the case sua sponte from Dallas to Amarillo, some five hours away, even though the defendant and all the witnesses lived in Dallas. 299 F.3d at 337, 340. However, Lipscomb is inapposite to this case.

A district court is not required to grant an intradistrict transfer request absent a "strong showing of prejudice" by the defendants. Duncan, 919 F.2d at 985. In overruling the motion, the district judge noted the electronic courtroom in Oxford as one factor weighing against transfer.

-7-

However, he also noted that Oxford is closer to Lawyer Wheeler's home in Clarksdale (which is actually located in the Delta division) than to Greenville, the seat of the Greenville division, and that Harold Wheeler's home in Carrollton is only a few miles closer to Greenville than to Oxford. In addition, although some of the defense witnesses lived closer to Greenville, others lived closer to Oxford. The Greenville division's higher population of African-American residents should not influence the transfer decision. See United States v. McKinney, 53 F.3d 664, 673 (5th Cir. 1995) (noting that "an attempt to influence the racial balance of the jury by setting a case in a particular division would not have been appropriate or acceptable"). The convenience of the defendants and the witnesses was duly considered by the district judge in overruling the motion and, based on the foregoing, the district court did not abuse its discretion by declining to transfer the case to the Greenville division.

## B. Motion to Quash

Appellants complain that the district judge erred in denying their motion to quash the jury venire. They argue on appeal that because substantially more African-Americans and farmers reside in the Greenville division than in the larger Northern District of Mississippi, they were denied a jury that represented a fair cross-section of the population as guaranteed by

-8-

the Sixth Amendment of the United States Constitution.[2]  See McKinney, 53 F.3d at 671.  In denying the motion, the district judged noted that the venire was selected by the computer at random from registered voters within the Northern District.

To establish a prima facie violation of the fair cross-section requirement, the Appellants must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) the representation of this group in the venire panel is not reasonable in relation to the number of such persons in the community; (3) that this under-representation is due to systematic exclusion in the jury selection process."  Id. (citing Duren v. Missouri, 439 U.S. 357, 364 (1979)).  African-Americans qualify as a "distinctive group" for purposes of the fair cross-section requirement.  United States v. Williams, 264 F.3d 561, 569 (5th Cir. 2001).  Because the district court determined that the selection process was random and computer-generated, there could be no "systematic exclusion" of African-Americans.  This factual determination is reviewed for clear error.  McKinney, 53 F.3d at 670.

The Appellants argue that the African-American population in the Northern District of Mississippi amounts to 43.1%, but that

---

[2]    The defendants failed to move to stay the proceedings prior to voir dire and failed to file a sworn statement of facts, as required by statute.  28 U.S.C. § 1867(a), (d) (2000).  Although the defendants failed to comply with the statutory procedures for challenging the jury venire, they may still assert a constitutional violation.  United States v. Williams, 264 F.3d 561, 567 n.3 (5th Cir. 2001).

only 22% of their venire panel was comprised of African-Americans. However, the Appellants must prove not only that African-Americans were under-represented in their case, but that they were systematically under-represented in other venires drawn from the Northern District. Williams, 264 F.3d at 568. The Appellants offer no evidence tending to prove that African-Americans were so under-represented and thus fail to establish a prima facie violation of the fair cross-section requirement. The district court did not err in denying the Appellants' motion.[3]

## C. Sufficiency of the Evidence

This court reviews denials of motions for judgment of acquittal de novo. United States v. Wise, 221 F.3d 140, 147 (5th Cir. 2000). The evidence is reviewed in the light most favorable to the government to determine whether a reasonable factfinder could find the evidence proves guilt beyond a reasonable doubt. United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), aff'd, 462 U.S. 356 (1983).

### 1. Knowingly False Statements

---

[3] Appellants argue that the district court's decision to move the trial from Greenville to Oxford denied them a fair cross-section of the community in the jury venire by diluting the percentage of African-Americans in the venire. Because we find that this case was originally set for trial in Oxford and, contrary to Appellants' assertions, never transferred, there is no issue here as to whether a discretionary transfer to a location with a significantly smaller African-American population would violate the fair cross-section requirement.

A violation of 18 U.S.C. § 1001(a)(2) is committed by knowingly making a materially false statement or representation, in any matter, within the jurisdiction of the United States Government, here, the United States Department of Agriculture. 18 U.S.C. § 1001(a)(2) (2000). Harold and Lawyer Wheeler maintain that they began planting cotton on May 26, 1998. They assert that the FSA employees' questions regarding their planting dates were ambiguous and that, consequently, their answers were not intended to mislead the government. They additionally contend that the May 25th deadline was not known to them at the time they applied for disaster relief. All of these arguments were made to the jury.

Sufficient evidence was adduced at trial for a reasonable jury to believe that, contrary to their representations, Harold and Lawyer Wheeler did not begin planting cotton on May 26, 1998. Harold Wheeler continues to assert that he picked up 33 bags of cotton seed on May 26, 1998, from Sanders Seed, Lewis Seed & Feed's supplier. However, a Lewis truck driver testified that he picked up the same 33 bags of cotton seed from Sanders and transported them to Lewis Seed & Feed on May 26, 1998. Uncontradicted documentary evidence proves that the same 33 bags were in fact picked up by Lawyer Wheeler on June 3, 1998, at Lewis Seed & Feed. In addition, the same documentary evidence proves that the Wheelers continued to buy cotton seed from Lewis Seed & Feed through June 15, 1998. The government also produced several witnesses who testified that the appearance of the Wheelers' cotton crops

-11-

indicated an initial planting date of mid- to late June. Given the weight of evidence, a reasonable jury could properly conclude that the Wheelers did not begin planting on May 26, 1998.

Harold and Lawyer Wheeler further argue that the questions posed to them by FSA employees were ambiguous, such that they believed they were to give their initial planting date, as opposed to a final planting date.[4] Harold Wheeler met with Brenda Ricks of the Leflore County FSA office on April 5, 1999. Ricks testified at trial that she would ask farmers, "[W]hat's your planting date or you can give me a range or either what day did you finish. . . ." Ricks testified that she remembered asking Harold Wheeler for his planting date, stating that "I just asked him when was it planted or the last day that he ended up planting it." Harold Wheeler's response was "May 25th." When he returned to the Leflore County FSA office on May 12, 1999, to fill out an additional application for irrigated acres, Ricks testified that she asked Wheeler if the planting date was the same as for the non-irrigated acres, and Wheeler responded "yes". Lawyer Wheeler filled out his disaster application for Sunflower County with Jo Muzzi, who testified that she has always asked farmers, "When did you finish planting your cotton?" When asked if she questioned Lawyer Wheeler about the date he completed planting cotton, Muzzi responded that she did in

---

[4] Even if the Wheelers believed they were to give their initial planting date, the evidence at trial was sufficient to prove that the date given — May 26, 1998 — was false *even as* a starting date.

-12-

fact ask him "when was your cotton planted." In response, Lawyer Wheeler gave May 26, 1998, as the relevant date.

The Wheelers argue that the questions were ambiguous and that they believed they were to give their initial planting date. However, testimony at trial proved that the final planting date of May 25th was well-known in the farming community as an important date for insurance and disaster relief purposes. Ricks and Muzzi testified that monthly newsletters were mailed to farm operators, like Harold and Lawyer Wheeler, detailing the final planting dates for various crops. Several of these newsletters were introduced into evidence and each one listed May 25th as the *final* planting date for cotton. Viewed in this context, the questions asked by both Ricks and Muzzi were not ambiguous. Thus, the evidence adduced at trial is sufficient to support a jury finding that the Wheelers made knowingly false statements to the FSA.

## 2. Material Statements

The district court correctly instructed the jury that, in order to be found guilty of violating 18 U.S.C. § 1001(a)(2), the defendants' false statements must have been material. That is, the statement "must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" United States v. Gaudin, 515 U.S. 506, 509 (1995) (internal citations omitted). The Wheelers argue that the final planting date was immaterial to the FSA's award of

-13-

disaster relief because (1) disaster form CCC-540A does not have a specific blank for the planting date, (2) the FSA employee in Carroll County did not ask Harold Wheeler for a planting date, (3) the FSA downloaded the planting date from the crop insurance form, and (4) entitlement forms had already been prepared.

The government produced ample evidence at trial to convince a reasonable jury of the materiality of the final planting date. John Tanner, the FSA State Office Specialist, testified that the final planting date was "crucial" to the FSA's determination of benefits. The final planting date was so important that disaster benefits decreased the farther away from May 25th the farmer planted. In addition, both Ricks and Muzzi testified that they were instructed to ask the farmers about their planting date because it was important. That a specific blank did not appear on the disaster application for the final planting date does not alone render the date immaterial.[5]

The Appellants emphasize that the entitlement reports, illustrating the possible monetary award, were already prepared before their visits to the FSA offices and that the information was merely downloaded from the crop insurance forms. However, the evidence at trial illustrated that the entitlement reports were

_____

[5] Count five against Harold Wheeler, relating to the Carroll County property, was dismissed from the suit at the close of the government's case. Although the FSA employee in that particular office failed to ask Wheeler for his final planting date, this omission does not render the information immaterial given the wealth of other evidence to the contrary.

merely projections of the award for which the farmer would be eligible if the disaster application were accepted. In addition, the downloaded crop insurance forms merely provided the certified acreage or production, not the planting date. These arguments do not warrant disturbing the jury's verdict with regard to materiality. The government produced sufficient evidence at trial to support a finding of materiality, and thus, the convictions should be affirmed.

**D.  Sentencing**

**1.  Loss Calculation**

When reviewing application of the Sentencing Guidelines, "[w]e accept district court fact findings relating to sentencing unless clearly erroneous, but review de novo application of the Guidelines." United States v. Deavours, 219 F.3d 400, 402 (5th Cir. 2000). In addition, "[a] district court's determination of the amount of loss caused by fraud is given wide latitude." United States v. Brewer, 60 F.3d 1142, 1145 (5th Cir. 1995).

In determining the amount of loss under U.S.S.G. § 2F1.1(b), the district court accepted the PSR's recommendation of $188,715 for Harold Wheeler and $58,470 for Lawyer Wheeler. The figures represent the amount of relief calculated by the FSA entitlement reports based on the Wheelers' fraudulent disaster

applications.[6]  The Wheelers argue the amount of relief for which they would have been entitled, had their applications been completed correctly, should be subtracted from the loss calculation.  They also note that because their disaster applications were held up for investigation, they never actually received any benefits.

The commentary to U.S.S.G. § 2F1.1 prescribes, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."  U.S. SENTENCING GUIDELINES MANUAL § 2F1.1, cmt. n.8 (1998).  Thus, it is proper for a district court to "calculate loss based on the risk engendered by the defendant[s'] criminal conduct, even where the actual loss was lower."  Brewer, 60 F.3d at 1145. By misrepresenting their planting date, the Wheelers intended to receive as much disaster relief as they could, hence, they should be charged with the full amount for sentencing.  In addition, evidence presented at trial and adopted by the district court at sentencing revealed that disaster benefits could be withheld entirely if the farmer fraudulently misrepresented a fact, such as

---

[6]  Harold Wheeler argues for the first time on appeal that $13,485, representing the disaster relief for the Carroll County property, should not be included in the loss calculation because count five of the indictment was dismissed. Assuming arguendo that the inclusion of the Carroll County amount was error, it is harmless.  Subtracting the amount from the total guideline loss of $188,715 leaves Harold Wheeler with a loss of $175,230, which remains in the $120,000 to $200,000 range applicable for a seven-level increase.  U.S. SENTENCING GUIDELINES MANUAL § 2F1.1(b)(1)(H) (1998).

-16-

a relevant date, when making his application. <u>See</u> 7 C.F.R. § 1477.109(c)(2) (2003). Thus, given the Wheelers' fraudulent misrepresentation, they most likely would not have been entitled to any disaster relief. The district court did not err in its determination of the appropriate sentencing loss.

## 2. More Than Minimum Planning

The Appellants argue the district court erred by imposing a two-level enhancement for "more than minimal planning" in response to the government's objection. U.S. SENTENCING GUIDELINES MANUAL § 2F1.1(b)(2)(A) (1998). "More than minimal planning" is defined as "more planning than is typical for commission of the offense in a simple form," or "any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." <u>Id</u>. at § 1B1.1, cmt. n.1(f). We review the district court's determination for clear error. <u>United States v. Clements</u>, 73 F.3d 1330, 1341 (5th Cir. 1996).

The district court noted that Harold and Lawyer Wheeler filed their false disaster applications in separate counties, but on the same day. Harold Wheeler visited the Leflore County FSA office several weeks later and again confirmed the false planting date. Lawyer Wheeler, on behalf of CMC Farms and Harold Wheeler, also reported false planting dates on the crop insurance forms. <u>See</u> <u>United States v. Carreon</u>, 11 F.3d 1225, 1241 (5th Cir. 1994) (for sentencing, a defendant may be held accountable for acquitted

-17-

conduct).  Given that the Appellants' false statements continued for roughly one year, the district court determined that a two-level enhancement for more than minimal planning was warranted. This determination was not clearly erroneous.

### III.  Conclusion

For the foregoing reasons, the judgments of conviction and sentences are **AFFIRMED**.