**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 6, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 04-10631
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL LEE HARMS,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

A jury convicted Michael Lee Harms of three counts of mail fraud and three counts of perjury in connection with the receipt of workers' compensation benefits. The district court sentenced him to 33 months imprisonment and ordered restitution of $354,389.61. Harms's appeal challenges the sufficiency of the indictment and the evidence against him, the prosecution's use of summary evidence, exclusion of defense evidence, and the denial of his motion for mistrial. He also appeals his sentence.

I

Harms suffered a back injury in 1996 while employed by the Federal Aviation Administration (FAA) as an air traffic controller. Unable to return to work, he began receiving workers' compensation benefits from the Office of Workers' Compensation Programs, an office of the Department of Labor (DOL). Except during an unsuccessful attempt to return to work in 1997, Harms continued to receive benefits until he returned to work in February 2002. As required by federal regulation, Harms periodically provided to the DOL a "Form 1032," a questionnaire regarding a recipient's employment, business, and related activities. These forms instructed Harms to disclose, among other things: (1) all employment for which he received a salary, wages, income, sales commissions, piecework, or payment of any kind; (2) all self-employment or involvement in business enterprises, including managing or overseeing a business of any kind; (3) any work or ownership interest in any business enterprise, even if the business lost money or performed duties for which he was not paid; (4) and any volunteer work for which any form of monetary or in-kind compensation was received. The forms cautioned that false or evasive answers might result in forfeiture of compensation benefits, civil liability, and criminal prosecution.

While receiving workers' compensation benefits, Harms served on the board of directors for Challenge Air for Kids ("Challenge Air"), a non-profit organization. He also served as president, chief executive office, and part owner of Amber Aviation, Inc. ("Amber Aviation"), a for-profit corporation closely associated with Challenge Air. Harms also flew planes for IFL Group ("IFL") and Hall Airways, Inc. ("Hall Airways"), two charter airline companies. He failed to disclose any of these activities on the 1032 forms he submitted to the DOL.

In 2003, Harms was charged with three counts of mail fraud, a violation of 18 U.S.C. § 1341,[1] and three counts of perjury for the purpose of obtaining workers' compensation benefits, a violation of 18 U.S.C. § 1920,[2] based on 1032 forms Harms submitted to the DOL via the United States Postal Service in 1999, 2000, and 2001.

A jury convicted Harms on all six counts. The presentence report (PSR) calculated the amount of loss for sentencing purposes as $354,389.61, the amount paid to Harms between February 1997 and March 2002. The PSR also increased Harms's offense level for obstruction of justice, finding that Harms had concealed or destroyed subpoenaed documents and instructed others to do

---

[1] Section 1341 provides in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . , for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341.

[2] Section 1920 provides:

> Whoever knowingly and willfully falsifies, conceals, or covers up a material fact, or makes a false, fictitious, or fraudulent statement or representation, or makes or uses a false statement or report knowing the same to contain any false, fictitious, or fraudulent statement or entry in connection with the application for or receipt of compensation or other benefit or payment under subchapter I or III of chapter 81 of title 5, shall be guilty of perjury . . . .

18 U.S.C. § 1920.

likewise. The jury made no factual findings regarding amount of loss or obstruction of justice. Harms objected to the loss calculation, the obstruction of justice enhancement, the amount of restitution, and the use of the 2003 edition of the Sentencing Guidelines. The district court overruled these objections and sentenced Harms to 33 months imprisonment, the bottom of the applicable Guideline range, and ordered restitution of benefits received.

II

Harms claims that the superseding indictment[3] was deficient. In the mail fraud counts, the indictment alleged that Harms engaged in a scheme to defraud the government by working as a pilot for Hall Airways, having Hall Airways give checks to Challenge Air in the amount of his pay, and having Challenge Air pay funds to the defendant. The indictment further alleged that Harms worked for IFL and had IFL's owner pay him in a lump sum, which Harms endorsed over to his father so that his father could send funds in the same amount to pay Harms's credit card bill. Finally, the mail fraud counts alleged that Harms served on the board of Challenge Air and as president and CEO of Amber Aviation and failed to disclose any of these facts in the 1032 forms he mailed to the DOL. Similarly, in the perjury counts, the superseding indictment alleged that Harms "falsified, concealed and covered up his true employment status, involvement in business enterprises of volunteer work for compensation" in the 1032 forms. Specifically, the indictment alleged that Harms failed to disclose in his 1999 and 2000 forms that: (1) he was employed as a pilot at Hall Airways; (2) acted as president and CEO of Amber Aviation; (3) was a member of the Challenge Air board of directors; and (4) received funds from Challenge Air and Amber Aviation. With respect to the 2001 form, the

---

[3] Unless otherwise specified, all references to the indictment are to the superseding indictment.

-4-

indictment additionally alleged that Harms failed to disclose that he was an employee of IFL.  Harms contends that the indictment fails to state an offense for either mail fraud or perjury because it alleges that he received "funds" from Charter Air and Amber Aviation rather than alleging that he received "compensation."[4]  Thus, he argues, the indictment effectively shifted the burden to him to prove that the funds he received were "reimbursements" rather than compensation.

We review the sufficiency of an indictment *de novo*.  *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).  "An indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and ensures that there is no risk of future prosecutions for the same offense."  *United States v. Sims. Bros. Constr., Inc.*, 277 F.3d 734, 741 (5th Cir. 2001).  We are not concerned with whether the indictment could have been better framed, or whether it invokes a particular "ritual of words," but whether it conforms to the minimal standards required by the Constitution.  *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir. 1989).  Thus, an exact recitation of an element of the charged crime is not required, provided the indictment as a whole "fairly imports" the element.  *Id*.

To prove the offense of mail fraud under § 1341, the Government must show "(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) the specific intent to defraud."  *United States v. Beiganowski*, 313 F.3d 264, 275 (5th Cir. 2002).  The Government must also prove that the scheme to defraud involved a materially false statement.  *Id*.  A statement is material if its has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed.  *United States v. Brown*, 303 F.3d 582, 601 (5th Cir. 2002) (citing *United*

---

[4]  The original indictment used the word "compensation" instead of "funds" in reference to the money Harms received from Challenge Air.

*States v. Gaudin*, 515 U.S. 506, 509 (1995)).

To prove that the offense of perjury for purposes of fraudulently obtaining federal workers' compensation benefits, the Government must show that the defendant: (1) knowingly and willfully, (2) falsified, concealed, or covered up a material fact, or made a false, fictitious, or fraudulent statement or representation, or made or used a false statement or report knowing the same to contain any false, fictitious, or fraudulent statement or entry, (3) in connection with the application for or receipt of compensation or other benefit or payment. 18 U.S.C. § 1920. Like mail fraud, a perjury charge under § 1920 requires a showing of materiality. *See United States v. Henry*, 164 F.3d 1304, 1308 (10th Cir. 1999) (considering, in an appeal from a conviction under § 1920, whether the government had proven that the defendant's false statements were material).

Harms's argument appears to be that the misstatements alleged by the Government are immaterial as a matter of law and that the superseding indictment thus fails to allege a necessary element of the crimes for which he was charged)) material misstatements. We decline to find the superseding indictment constitutionally deficient. Whether a misstatement is material is generally an issue of fact for the jury to decide. *See United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (stating that materiality is an issue for the jury and that "so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence." (quotation omitted)); *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998) ("unless no reasonable mind could find a statement or omission to be material, criminal trial must submit the issue to the jury") (citing *Gaudin*, 515 U.S. at 511).

The 1032 forms Harms completed require wide-ranging disclosure. The instructions require disclosure of "ALL self-employment or involvement in business enterprise." This includes "managing

and/or overseeing a business of any kind." Recipients must also disclose "ANY work or ownership interest in any business enterprise." Even if the recipient was not paid for those duties, he or she "must show as rate of pay what it would have cost the employer or organization to hire someone to perform the work or duties." In addition to such employment, recipients must disclose "any volunteer work for which ANY FORM of monetary or in-kind compensation was received." In view of the extensive disclosures required by the 1032 forms, the indictment in this case alleges a collection of facts that, at least on their face, might be material. With respect to the August 1999 and March 2000 1032 forms, the perjury counts of the indictment allege that Harms failed to disclose the following "material facts": (1) that he was employed as a pilot at Hall; (2) acted as president and chief executive office of Amber Aviation; (3) was a member of the Challenge Air Board of Directors; and (4) received funds from Challenge Air and Amber Aviation. With respect to the 1032 form Harms filed in March 2001, the indictment alleges that Harms omitted the same material facts, as well as his employment as a pilot by IFL. These counts further incorporate the mail fraud counts' allegations. The indictment alleges that these facts were material because "[f]orm 1032 required that information provided be truthful and complete and further required disclosure of any employment, self-employment, volunteer work for payment and any involvement in a business enterprise."

The Government has met its burden of identifying the facts it claims were material and alleging why those facts were material. *Cf. United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (holding that an indictment failed to sufficiently allege a material falsehood or omission amounting to a material falsehood because the indictment failed to allege what facts made the omission material). Contrary to Harms's assertion, the burden of proof to show the materiality of the facts alleged in the indictment remained with the Government. Whether or not that burden was satisfied is a question

of evidentiary sufficiency, discussed in part III, *infra*. Because a reasonable jury could find the omissions alleged by the indictment to be material, we hold that the indictment sufficiently alleged materiality and therefore met the minimum standards required by the Constitution.

III

Harms also argues that the evidence produced by the Government is insufficient to sustain his convictions. Harms's sufficiency of the evidence challenge essentially reframes his insufficient indictment claim, claiming that the Government failed to satisfy its burden on the issue of materiality. Specifically, he contends that the Government failed to prove that his failure to disclose his involvement with Challenge Air, Amber Aviation, Hall Airways, and IFL were material facts.

In assessing a challenge to the sufficiency of the evidence in a criminal trial, we ask whether, viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003). "All reasonable inferences must be drawn, and all credibility determinations made, in the light most favorable to the verdict." *Id.* "The evidence need not exclude every reasonable hypothesis of innocence and the jury is free to choose among reasonable interpretations of the evidence." *United States v. Brugman*, 364 F.3d 613, 615 (5th Cir. 2004) (citing *United States v. Perrien*, 274 F.3d 936, 939-40 (5th Cir. 2001)).

After carefully reviewing the record in this case, we are satisfied that, viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could conclude that the Government proved beyond a reasonable doubt that Harms concealed material facts. Joshua Hall, the former president of Hall Airways, testified that Harms agreed to work for him as a contract pilot in 1998. Hall testified that Harms told him he was not able to receive income because he was "on

disability," and asked Hall to donate what would have been his pay to Challenge Air and Amber Aviation.[5] Hall testified that he would not have written the checks but for Harms's work for the company. It is uncontested that Harms served on the board of directors of Challenge Air and as president and chief executive officer of Amber Aviation and received payments from both. The Government also introduced evidence that Harms received 25 hours of free flying time on the Amber airplane and reimbursement for expenses incurred in connection with his activities. Harms's forms also did not show what it would have cost to hire someone to perform the work done by Harms.

IFL president Michael Church testified that Harms was an IFL employee. He testified that Harms told him he was retiring from the FAA and could not accept any compensation until after his paperwork was final, but that Harms did not tell him of his disability. Church testified that there was an agreement that Harms would start receiving pay after his retirement became effective. Church also testified that he made a "loan" to Harms, but did not expect to get the money back, that he would not have given Harms more than he had earned as pay, and that he always intended that Harms receive the money that he had earned as a pilot. Martha Wale, vice-president of IFL, testified that IFL paid Harms $13,000 on October 1, 2001 and that, at the time, Harms was owed approximately $13,365 in salary. Wale also testified that she did not consider the payment a loan and did not expect it to be repaid. The Government also introduced evidence that Harms received a $13,000 check from IFL

---

[5] Hall also testified that Hall Airways paid Harms's son on several occasions to wash the company planes with "a garden hose and a bucket of water," the only time the company washed its planes. Hall made the checks out to Harms's son, but delivered them to Harms. Other testimony indicated that Harms deposited these checks into his bank account. Harms claimed he deposited the checks into his account only because his son did not have a bank account.

Hall further testified that Harms helped arrange a "jump-seat agreement" between Hall Airways and Southwest Airlines that permitted Hall Airways employees, including Harms, to fly for free on Southwest Airlines planes. Hall testified that, as a condition of such agreements, the flights must be for personal rather than business use.

and endorsed the check over to his father, Gerald Harms, who then wrote a check for $13,000 payable to his son's (Harms's) credit card account.

Frances Memmolo, district director of the Division of Federal Employees' Compensation in Dallas, Texas, testified about the DOL's use of 1032 forms, stating that affirmative answers to the questions on the 1032 form result in the claims examiner conducting a more thorough investigation of the case. Memmolo further testified that the DOL does not have the resources to verify the answers on the 1032 forms, and that recipients are therefore warned on the forms that they "are supposed to be reporting the truth and we have to accept what they tell us." Finally, Memmolo testified that affirmative answers to the 1032 forms questions could result in changes to the recipient's status. Considering the evidence produced at trial, including Memmolo's testimony and the terms of the 1032 forms themselves, and drawing all reasonable inferences in favor of the Government, a reasonable trier of fact could conclude that Harms failed to disclose material information as charged in the superseding indictment.

IV

Harms also claims that the district court erred by admitting a time-line chart comparing the dates and payments Harms received to the dates of Harms's 1032 forms and Harms's activities while receiving benefits, along with the accompanying testimony of Government witness Tom Hager. Admission of evidence, including summaries and summary testimony, is reviewed for abuse of discretion. *United States v. Buck*, 324 F.3d 786, 790 (5th Cir. 2003). An error in the admission of evidence is excused "unless it had substantial and injurious effect or influence in determining the jury's verdict." *Id*. "The admission of organization charts and summary evidence is governed by Federal Rules of Evidence 611(a) and 1006." *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000).

"[A]llowing the use of charts as 'pedagogical' devices intended to present the government's version of the case is within the bounds of the trial court's discretion to control the presentation of evidence under Rule 611(a)." *Id*. "[S]uch charts are not admitted into evidence and should not go to the jury room absent consent of the parties." *Id*. If a summary or chart is introduced solely as a pedagogical device, the court should instruct the jury that the chart or summary is not to be considered as evidence, but only as an aid in evaluating evidence. *Buck*, 324 F.3d at 791.

"In contrast, Rule 1006 applies to summary charts based on evidence previously admitted but which is so voluminous that in-court review by the jury would be inconvenient." *Taylor*, 210 F.3d at 315. "For complex cases, we have [also] allowed summary witnesses in a limited capacity." *United States v. Fullwood*, 342 F.3d 409, 413 (5th Cir. 2003). We have cautioned, however, that "while such witnesses may be appropriate for summarizing voluminous records . . . rebuttal testimony by an advocate summarizing and organizing the case for the jury constitutes a very different phenomenon, not justified by the Federal Rules of Evidence or our precedent." *Id*. at 414.

Prior to trial, the Government offered the time-line under Rule 1006. Harms objected to its admission into evidence, but not to its use for demonstrative purposes. The court stated that it would allow the exhibit to be used for demonstrative purposes. The court later instructed the jury as follows: "You'll recall that certain charts and summaries were received as demonstrative evidence. Charts and summaries are valid only to the extent that they accurately reflect the underlying supporting evidence." Although the court's reference to "demonstrative evidence" is imprecise, the record shows that the time line was never admitted into evidence or allowed into the jury room. Further, when the jury asked if it could use the time line, the court replied that the summary was not in evidence and was "only for demonstrative purposes."

Hager's testimony summarized the Government's evidence relating to Harms's receipt of funds from Charter Air, Amber Aviation, Hall Airways, and IFL. His testimony also summarized evidence that Harms received a $13,000 check from IFL and endorsed the check over to his father, Gerald Harms, who then wrote a check for $13,000 payable to his son's VISA account. Finally, Hager explained the contents of the time-line.

After reviewing the Government's exhibits and Hager's testimony, we believe the district court did not abuse its discretion in permitting Hager's summary testimony. The evidence at issue presented an appreciable degree of complexity and the district court gave a limiting instruction to the jury. *Cf. United States v. Okoronkwo*, 46 F.3d 426, 435 (5th Cir. 1995) (use of summary witness not reversible error where merely cumulative of substantive evidence); *United States v. Winn*, 948 F.2d 145, 157-58 (5th Cir. 1991) (use of summary chart and testimony not reversible error where prejudice neutralized by instruction). The time-line and Hager's testimony were supported by other evidence and we find neither to have been inconsistent with the other evidence presented. *Cf. Buck*, 324 F.3d at 791 (holding admission of pedagogical chart into evidence to be harmless where the chart was supported by and accurately summarized other evidence). Finally, we are not persuaded that Hager's testimony implicates the concerns we expressed in *Fullwood* about the use of summary testimony as "rebuttal testimony by an advocate summarizing and organizing the case for the jury . . . [or] a substitute for, or a supplement to, closing argument." *Fullwood*, 342 F.3d at 414. Harms has failed to show an abuse of discretion or a violation of his substantial rights in the use of the time-line or admission of Hager's testimony.

V

Harms also claims that the district court erred in excluding defense exhibits and in limiting

-12-

cross-examination relating to his injury, the DOL's reliance on his statements, and the FAA's and DOL's knowledge that he was piloting airplanes. He concedes that the court permitted him to testify regarding each of these facts, but claims that the exclusion of documentary evidence supporting his testimony was nonetheless prejudicial. The district court apparently excluded the bulk of this evidence on grounds of relevancy. Harms contends that evidence concerning his injury was relevant because it would have provided a "context of events" for the jury to evaluate his actions. He also argues that evidence of his efforts to return to work was relevant to whether he intended to defraud, and that his disclosure of his flying activities to doctors who provided reports to the DOL contradicted the Government's allegation of concealment.

We review the exclusion of evidence for abuse of discretion. *Buck*, 324 F.3d at 790. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rulings limiting the scope or extent of cross-examination are also committed to the sound discretion of the trial court. *United States v. Barksdale-Contreras*, 972 F.2d 111, 115 (5th Cir. 1992). "If we find an abuse of discretion in admitting or excluding evidence, we next review the error under the harmless error doctrine, affirming the judgment unless the ruling affected the substantial rights of the complaining party." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

The district court did not commit reversible error in excluding evidence relating to the extent of Harms's injuries and Harms's rehabilitation efforts. Even if Harms's evidence met the minimum threshold of relevancy, its exclusion was harmless because it could not have affected the jury's determination any of the charged counts. *Cf. United States v. Tucker*, 345 F.3d 320, 326-27 (5th Cir.

2003) (" the necessary inquiry is whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with the additional evidence inserted"). The jury was not required to determine whether Harms actually suffered an injury or the extent of that injury, or artificially prolonged his absence from work, but whether he engaged in a scheme to defraud by concealing material information in the 1032 forms submitted to the DOL. Harms's evidence regarding a tangential fact could not have affected the jury's verdict in this case. Neither did the court commit reversible error in excluding evidence of what FAA employees knew about Harms's activities. Generally, "notice or actual knowledge of one United States government agency will not be imputed to another agency." *United States Small Bus. Admin. v. Bridges*, 894 F.2d 108, 112 (5th Cir. 1990).[6]

Harms has also not shown reversible error in the exclusion of doctors' reports referencing Harms's flying during the period he was collecting workers' compensation benefits. The June 1999 report mentions in passing only that Harms was "able to fly in the right seat but is not doing any left-seat flying." A January 2001 letter states that he was working as a pilot on a volunteer basis. Even if this evidence was relevant to his intent, Harms has not shown reversible error. The trial court permitted Harms to testify both that he told his doctors about his flying and that he believed the doctors were forwarding that information to the DOL. We are not persuaded that the exclusion of these reports violated his substantial rights notwithstanding his testimony to the same effect.

Harms also contends that the trial court erred in denying his motion for mistrial after the prosecutor stated during closing rebuttal that "there's no evidence whatsoever of a broken back."

---

[6] For the same reason, the district court did not err in instructing the jury that knowledge of one government agency should not be imputed to another. "A district court has broad discretion in framing the instructions to the jury and this Court will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law." *United States v. McKinney*, 53 F.3d 664, 676 (5th Cir. 1995).

Harms objected to the remark after the conclusion of closing argument and out of the jury's presence. He is entitled to relief "only if he can show, in the context of the trial, that the remarks amounted to plain error." *See United States v. Caucci*, 635 F.2d 441, 448 (5th Cir. 1981). To establish plain error, he must show that the error is clear or obvious and that the comments, "taken as a whole in the context of the entire case, substantially prejudiced [his] rights." *United States v. Montemayor*, 684 F.2d 1118, 1124 (5th Cir. 1982). "Plain error may be recognized only if the error is so obvious that the failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice." *Id*. (internal quotation omitted). Harms makes no argument under the plain-error standard. While the prosecutor's statement appears to have been neither warranted nor relevant, Harms has not shown that a comment on an essentially irrelevant matter substantially prejudiced his rights or resulted in a miscarriage of justice.

VI

Finally, Harms appeals his sentence. Renewing objections made before the district court, he claims that the court erred by (1) imposing a sentencing enhancement for obstruction of justice; (2) miscalculating the amount of loss for sentencing purposes and the amount of restitution; and (3) applying the 2003 rather than the 2000 version of the Sentencing Guidelines.

A

Harms argues that the increase for obstruction of justice was unsupported by the facts. We review the district court's factual findings with respect to sentencing under the Guidelines for clear error. *United States v. Villanueva*, 408 F.3d 193, 203 n.9 (5th Cir. 2005) ("Post-*Booker*, we continue to apply the same standard of review to claims of erroneous fact-finding with respect to the application of adjustments, i.e., we review for clear error." (citations omitted)). There is no clear

error if the district court's finding is plausible in light of the record as a whole. *United States v. Edwards*, 303 F.3d 606, 645 (5th Cir. 2002). We give deference to the credibility determinations of the district court. *United States v. Perez*, 217 F.3d 323, 331 (5th Cir. 2000).

Section 3C1.1 of the Guidelines provides for an increased offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1(A) (2003). Trial testimony indicated that Harms concealed at least one subpoenaed document relevant to his work for Challenge Air, and that he told a Challenge Air executive to deny that the document existed and to destroy any similar document. The PSR also reported that Harms wrote a back-dated check to IFL in order to make it appear that he was repaying a loan from IFL rather than receiving a salary. This was corroborated by testimony from Hall, who stated that Harms showed concern about the IFL money and asked him about the date when government investigators began to ask about Harms's employment. Given this evidence, the trial court's conclusion that Harms obstructed justice is plausible in light of the record as a whole. Accordingly, we find no reversible error in the sentencing increase.

B

Harms also claims that the district court: (1) violated the Ex Post Facto Clause of the Constitution by applying the 2003 version of the Sentencing Guidelines, resulting in a harsher sentence than would have been imposed under the Guidelines in effect at the time of his crimes; (2) miscalculated the amount of loss for sentencing purposes; and (3) miscalculated the amount of restitution. We do not reach Harms's Ex Post Facto claim because we find that the court incorrectly

calculated the amount of loss for sentencing purposes under either version of the Guidelines.[7]

In cases involving fraud, the defendant's sentencing range under the Guidelines is calculated based on the amount of loss resulting from the fraud. "Although the determination of loss is a factual finding reviewed for clear error, the court's choice of the method by which losses are determined involves an application of the sentencing guidelines, which is reviewed *de novo*." *United States v. Deavours*, 219 F.3d 400, 402 (5th Cir. 2000). Harms claims that the district court erred in calculating the amount of loss as the total amount of benefits Harms received during the period covered by his false statements. He contends that the amount of loss should not include any benefits to which he would have been entitled absent fraud. We agree.

In *United States v. Henry*, the Tenth Circuit, applying pre-amendment Guidelines, adopted the Government's approach, defining the amount of loss as "'the amount of the benefits obtained,' not the amount of benefits obtained minus the amount that would have been obtained if no false statement had been made." 164 F.3d 1304, 1310 (10th Cir. 1999) (quoting 18 U.S.C. § 1920). The court cited the Seventh Circuit's statement in *United States v. Brothers* that "[i]f a claimant submits a false 1032 statement he forfeits the entire disability benefit even if he would have been entitled to

_____

[7] "A sentencing court must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). An Ex Post Facto Clause violation occurs when application of a current Guidelines results in a harsher penalty than would application of the Guidelines in place at the time of the offense. *Id*. Post-2000 versions of the Sentencing Guidelines fold former § 2F1.1, addressing offenses involving fraud or deceit, into current § 2B1.1, addressing basic economic offenses. In at least some cases, application of § 2B1.1 would result in a harsher sentence than application of former § 2F1.1. We do not reach the Ex Post Facto issue in this case, however, because, for the reasons discussed *infra*, we hold that the district court misapplied the Guidelines in determining the "amount of loss" for sentencing purposes.

-17-

a reduced benefit if he had submitted an accurate form." 955 F.2d 493, 495 (7th Cir. 1993).[8]

The Fourth Circuit rejected *Henry*'s approach in *United States v. Dawkins*, 202 F.3d 711 (4th Cir. 2000). The *Dawkins* court distinguished the amount of loss for sentencing purposes from the amount of forfeiture of benefits obtained through false statements, explaining that

> even if automatic forfeiture of the entire voucher amount were required as a result of the false statement, this does not mean that the amount forfeited by a defendant constitutes a loss to the Government for guidelines purposes. Forfeiture is a penalty imposed on a criminal independent of any loss to the crime victim. As Chief Judge Wilkinson recently explained, the "procedures for forfeiture are set forth in a comprehensive statutory framework of their own, one which is separate and apart from the sentencing guidelines."

*Dawkins*, 202 F.3d at 714-15 (quoting *United States v. Weinberger*, 91 F.3d 642, 644 (4th Cir. 1996)). The *Dawkins* court relied on the Fourth Circuit's previous decision in *United States v. Parsons*, 109 F.3d 1002 (4th Cir. 1997). In *Parsons*, the court reasoned that "loss" for purposes of the Guidelines was "the actual, intended, or probable loss to the victims." The loss itself (whether the actual or intended loss) is limited to the tangible economic loss of the victim." *Id*. at 1004. The court noted that amount of loss generally did not include interest accrued, and that loss is generally calculated not as the entire amount involved in the fraudulent scheme but rather as the amount paid minus the value received. *Id*. (citing, *inter alia*, *United States v. Chatterji*, 46 F.3d 1336, 1339-41 (4th Cir. 1995) (victim of fraud who received full value for his money suffered no loss)). Thus, the

---

[8] This court adopted a similar position in an unpublished case, *United States v. Wheeler*, No. 02-60830, 2003 WL 22469741 (5th Cir. Oct. 31, 2003). In *Wheeler*, we held that the defendants, recipients of federal disaster relief payments, "intended to receive as much disaster relief as they could, hence, they should be charged with the full amount for sentencing." *Id*. at *7. Both *Wheeler* and *Henry* involved application of the pre-amendment Guidelines. The Guidelines were amended in 2001 to revise the special rule on determining loss in cases involving government program benefits. Accordingly, we need not express an opinion on whether *Wheeler* and *Henry* were correct at the time.

court concluded, amount of loss should be limited to the amount fraudulently obtained in excess of the amount to which the defendant was lawfully entitled. *Parsons,* 109 F.3d at 1005. Relying on *Parsons*, the *Dawkins* court concluded that the amount of loss should be calculated as "the difference between the amount of benefits Dawkins actually received and the amount he would have received had he truthfully and accurately completed the 1032 forms." *Dawkins*, 202 F.3d at 715.

For the reasons explained in *Dawkins* and *Parsons,* we are persuaded that the Fourth Circuit is correct in distinguishing the amount of forfeiture from the amount of loss and in calculating the amount of loss based on the amount of excess benefits received as a result of fraud. This result appears even clearer under the 2003 version of the Guidelines applied by the district court, which contains a special guideline for cases involving government benefits providing that the "loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be." U.S.S.G. § 2B1.1(n.3(F)(ii)) (2003). For example, "if the defendant was the intended recipient of food stamps having a value of $100 but fraudulently received food stamps having a total value of $150, loss is $50." *Id*. Thus, we conclude that the district court misapplied the Guidelines by calculating Harms's sentence based on the total benefits received. *See United States v. Urias-Escobar*, 281 F.3d 165, 167 (5th Cir. 2002) (Guidelines commentary are given controlling weight unless plainly erroneous or inconsistent with the Guidelines). Instead, the amount of loss is the difference between the amount the defendant actually received and the amount he would have received absent the fraud.

By contrast, we reject Harms's assertion that the district court erred in ordering restitution of all the benefits Harms received. The plain language of 20 C.F.R. § 10.529(a) provides that "[i]f an employee knowingly omits or understates any earnings or work activity in making a report, he or

she shall forfeit the right to compensation with respect to any period for which the report is required." *See also Brothers*, 955 F.2d at 495 ("If a claimant submits a false 1032 statement he forfeits the entire disability benefit even if he would have been entitled to a reduced benefit if he had submitted an accurate 1032 form."); *Dawkins*, 202 F.3d at 714-15 (distinguishing between amount of forfeiture for purposes of restitution and amount of loss for purposes of sentencing). Thus, the district court did not err in ordering restitution of all the benefits Harms received.

## VII

For the forgoing reasons we AFFIRM Harms's conviction, VACATE the sentence, and REMAND for further proceedings not inconsistent with this opinion.

EDITH H. JONES, Chief Judge, concurring in part and dissenting in part:

This prosecution was brought to prove that Michael Harms was failing to report outside compensation while he received federal workers' compensation after an injury suffered on the job as an air traffic controller. It is, in my view, a very close case, because Harms was clearly trying to steer within the letter of the reporting requirements while keeping afloat the charitable enterprise Challenge Air. His defense thus centered around the contention that he received only reimbursement of expenses that he incurred at Amber for the benefit of Challenge Air; reimbursement of expenses is not compensation for work performed, nor is it "volunteer work for compensation." The Office of Workers' Compensation Programs, he reasonably contends, was only interested in compensation, i.e., receipt of funds for work performed that would potentially offset the worker's federal benefits.

Harms took the stand in his own defense, as did his retired minister father. While there was considerable competing testimony about the nature of some of the payments Harms received, the government never tackled Harms's proof that he received only reimbursements for expenses from Challenge. A rational jury could have found reasonable doubt about the government's case. What turned the tide, I believe, were three significant rulings. First, the court allowed the government to prove only that Harms

-21-

received "funds," not compensation for work performed, from Challenge. Second, the court refused to admit numerous exhibits--other government forms--showing that Harms never concealed his aviation activities from either the Department of Labor or the FAA or his treating physicians. This evidence was relevant to Harms's state of mind when he filled out the forms at issue here. Third, the court refused to admit medical evidence concerning Harms's disability, stating that it would confuse the jury and invite a verdict based on sympathy. The prejudice to Harms from this refusal was compounded when the government lawyer outrageously implied, in her closing rebuttal argument, that Harms's disability was fake. There was no justification for the government's blatant attempt to poison the well in this way--unless it, too, doubted the strength of its case on the evidence before the jury.

Based on these trial errors, I would vacate the conviction and remand for a new trial. Accordingly, I respectfully dissent from the affirmance of the conviction, but I concur with the decision to remand for resentencing.