# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20116

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

FERNANDO CASTREJON-ESTEBAN, also known as Fernando Esteba Castrejon, also known as Esteban Fernando-Castrejon, also known as Fernandro Castrejon-Esteban, also known as Fernando E. Castrejon, also known as Fernando Esteban Castrejon, also known as Fernando Castrejon Esteban,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CR-623

Before JOLLY, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:*

After a one-day jury trial, Fernando Castrejon-Esteban was convicted of violating 8 U.S.C. § 1326, which prohibits a deported alien from reentering the United States without having obtained consent from the Secretary of the U.S. Department of Homeland Security ("DHS") to reapply for admission.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-20116

Castrejon-Esteban proffered two provisions of the Texas Administrative Code, which he averred provided circumstantial evidence that he had the requisite DHS consent. The district court excluded that evidence as irrelevant.

On appeal, Castrejon-Esteban argues that the district court abused its discretion when it excluded the text of those Texas provisions from the jury. We affirm.

## I.

At trial, Castrejon-Esteban challenged only one element of the government's case: whether he had obtained DHS's express consent to reenter the United States after his deportation.[1] *See United States v. Jara-Favela*, 686 F.3d 289, 302 (5th Cir. 2012) (listing the elements necessary to convict a defendant of violating § 1326); *United States v. Morales-Palacios*, 369 F.3d 442, 446 (5th Cir. 2004) (noting that the consent must be "express").[2]

Respecting this element, the government's evidence that DHS consent to reenter was lacking was three-fold: First, the arresting deportation officer testified that, before he arrested Castrejon-Esteban, he searched Castrejon-Esteban's alien file and three DHS immigration databases for any record showing that Castrejon-Esteban had DHS consent to reenter the United States. The officer found no record of consent in any of these sources. Second, the records manager for DHS's Citizenship and Immigration Services division testified that, after Castrejon-Esteban's arrest, he searched multiple DHS

---

[1] Castrejon-Esteban was charged with reentering the United States without obtaining the DHS's consent to reapply for admission. *See* 8 U.S.C. § 1326. To avoid this twist of words, and favoring readability over precision, we simply refer to this as "DHS consent" and "consent to reenter."

[2] Because Castrejon-Esteban reentered the United States in 2010, he was required to obtain consent to reapply for admission from the Secretary of the DHS. *See* 6 U.S.C. §§ 202, 251 (amending 8 U.S.C. § 1326(a) by transferring the authority to grant consent to the Secretary of the DHS).

2

No. 14-20116

databases for any record of DHS consent, finding none. Finally, after his arrest and after voluntarily waiving his right to remain silent, Castrejon-Esteban admitted that he entered the Unites States in July 2010 (seven months after his November 2009 deportation). He also admitted that he entered the country without permission and that he did not apply for permission to reenter after his 2009 deportation.

The government also produced evidence that Castrejon-Esteban received the following warnings during his 2009 deportation: "After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States. . . . [I]t is a crime for an alien who has been removed from the United States to enter, or attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent."

Through defense cross-examination of witnesses, Castrejon-Esteban established that DHS sometimes loses portions of the paper alien files, suggesting that the government's negative search of its files was unreliable. The jury also learned that, after his 2010 reentry, Castrejon-Esteban obtained a Texas driver's license.

Castrejon-Esteban sought further to establish DHS consent. Because Castrejon-Esteban had a Texas-issued driver's license, he sought to introduce the text of two provisions of the Texas Administrative Code to create doubt as to the government's contention that he lacked DHS consent. One such provision of the Texas code states that an applicant for a driver's license must provide "information relating to [his] United States citizenship" and must "provide [his] country of residence." *See* 37 Tex. Admin. Code § 15.46 (2011). The other provision states that applicants who are non-citizens and non-permanent residents "must present valid documentation issued by the United States . . . that shows lawful temporary admission to the United States." *Id.*

3

§ 15.171 (requiring the documentation to be issued by the Department of Justice, Department of State, Department of Homeland Security, Immigration and Naturalization Service, Bureau of Citizenship and Immigration Services, or any successor agency of these agencies).  He argues, therefore, that his possession of a Texas driver's license tends to show that he lawfully was present in the United States, *i.e.*, that he was present with the consent of the DHS.  These Texas code provisions, however, require the *applicant* only to provide information and documentation; they do *not* require state officials to do anything with the information, including verifying the documents' authenticity or veracity.

The district court precluded Castrejon-Esteban from introducing into evidence the text of these Texas provisions as irrelevant.  *See* Fed. R. Evid. 401, 402.  In denying Castrejon-Esteban's proffer, the district court stated that Texas is not involved in immigration matters and does not participate in DHS's decisions to grant or deny consent to reenter the United States, so such evidence is irrelevant and confuses the issue.  In reaching its conclusion, the district court noted that Castrejon-Esteban's proffer was that the documentation he used to obtain the driver's license was his name and social security number and, under the Texas provisions, his social security card "should have been able to get [him] a driver's license."[3]

On appeal, Castrejon-Esteban argues that the district court's evidentiary ruling constitutes reversible error.  Specifically, he contends that the text of the two Texas provisions was relevant as to whether he had obtained the requisite consent from the DHS to reenter the United States, because,

---

[3] Castrejon-Esteban obtained a social security number decades ago, when he was present in the United States lawfully.  After that time, he was convicted of a felony and subsequently deported in 1994.  Because Castrejon-Esteban has repeatedly returned to the United States without permission, the 1994 order of removal has been reinstated five times (not including this case).

## No. 14-20116

under the proffered Texas provisions, a driver's license applicant must present proof of lawful status in the United States; or restated, Castrejon-Esteban argues that possession of a driver's license suggests that he had the requisite DHS consent.

## II.

We review the exclusion of evidence for abuse of discretion, "providing the trial court wide discretion in assessing the relevance and prejudicial effect of evidence." *United States v. Alaniz*, 726 F.3d 586, 606 (5th Cir. 2013). If we find an abuse of discretion, we next review the error under the harmless error doctrine, affirming the judgment unless the ruling affected the substantial rights of the complaining party. *United States v. Harms*, 442 F.3d 367, 377 (5th Cir. 2006).

The district court did not abuse its discretion by excluding the text of the Texas Administrative Code sections. The alleged logical connection of these driver's-license provisions to the contested element of the illegal-reentry offense seems to be as follows: (1) Castrejon-Esteban obtained a Texas driver's license. (2) Therefore, he must have satisfied the requirements in the proffered code sections; that is, Castrejon-Esteban must have stated that he resided in Texas, *see* § 15.56, and he must have presented "valid documentation issued by the United States" that showed he had lawful temporary admission to the United States, *see id.* § 15.171. (3) Because he must have presented documents to the Texas DMV showing his lawful temporary admission, Castrejon-Esteban must have requested the DHS's consent to reenter the United States, and the DHS must have consented to that request. (4) Even though there is no record of Castrejon-Esteban's request or the DHS's consent, such consent could have been granted but the record of it probably has been lost because the DHS has, in the past, lost papers in other aliens' files. (5) Therefore, a jury could find

No. 14-20116

that Castrejon-Esteban had DHS consent to reenter notwithstanding that neither DHS nor Castrejon-Esteban has any record of that consent.

Given the tenuous links between and among these "logical" steps, we find no abuse of discretion in the district court's conclusion that the probative value of the Texas-code evidence is lacking. For the jury reasonably to draw the inference of consent, additional necessary facts are missing. Castrejon-Esteban only identifies his social security number as a document he furnished to the Texas DMV, a document that he obtained when he was lawfully present and which he obtained before his 1993 felony conviction and before his 1994 deportation. Use of his decades-old social security card is probative of no fact relevant to the instant dispute; it does not make it more or less probable that, after his 2009 deportation, he obtained DHS consent to reenter the United States.[4] The district court plainly did not abuse its discretion in excluding the proffered evidence as irrelevant. *See* Fed R. Evid. 401(a) (stating that relevant

---

[4] Castrejon-Esteban's proffer failed to provide any details about his application for a license other than his use of a decades-old social security number. The proffer did not include any evidence regarding (1) the documentation or statements he provided to obtain his driver's license, (2) the truthfulness of that information, or (3) whether the documents he supplied were obtained from DHS (as opposed to some other agency or entity). His proffer also failed to mention which provision of the Texas code was used to obtain his license. *See* 37 Tex. Admin. Code § 15.171(a) (2011) (providing various expiration dates for driver's licenses depending on the immigration status claimed by the applicant). Critically, his proffer did not include evidence that he ever sought the DHS's consent or that the State of Texas verified (or even cared) that Castrejon-Esteban had the DHS's *express* consent to reenter. His proffer also failed to include a hint which files specifically related to his alien status were missing from his hardcopy alien file or the DHS databases. Because the record is devoid of any fact(s) that links the proffered Texas code provisions with the "missing" DHS consent paperwork required to challenge the government's case, Castrejon-Esteban's evidence leaves us with speculation, not relevant evidence. *Accord Holmes v. South Carolina*, 547 U.S. 319, 326 (U.S. 2006) (noting that the Constitution permits judges to exclude evidence that is "only marginally relevant"); *id.* at 327 ("[E]vidence [of third-party guilt] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial."); *United States v. Hernandez-Hernandez*, 519 F.3d 1236, 1241 (10th Cir. 2008) ("Relevant evidence does not include the suggestion of speculative possibilities.").

6

No. 14-20116

evidence must have a "tendency to make a fact more or less probable than it would be without the evidence").[5]

### III.

The district court acted within its discretion when it excluded Castrejon-Esteban's irrelevant evidence.  Castrejon-Esteban's conviction is, therefore,

AFFIRMED.

---

[5] Because we find no abuse of discretion in the district court's relevance determination, we need not reach the government's alternative arguments, under Rule 403 and the harmless-error standard of review, for affirming Castrejon-Esteban's conviction.