# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2021

Lyle W. Cayce
Clerk

No. 20-50029

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARCO A. VARGAS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CR-531-1

Before WIENER, ELROD, and HIGGINSON, *Circuit Judges*.

WIENER, *Circuit Judge*:

Defendant-Appellant Marco A. Vargas appeals the fifty-one month sentence he received after a jury found him guilty of fraudulently obtaining federal worker's compensation benefits and stealing government property. For the following reasons, we affirm.

## I. Background

Vargas was working as a civilian employee on an air force base when he "amputated [his] left thumb [and] severed and mangled tendons on other fingers" with a circular saw. He filed a claim for compensation, falsely

No. 20-50029

reporting that the accident occurred while he was installing a fire alarm.[1] After his claim was approved and some benefits were paid, an investigation revealed that Vargas had been injured while shaving down copper wire that he had stolen from the base.

Vargas was charged with and convicted of (1) making a false statement to obtain federal employee compensation, in violation of 18 U.S.C. § 1920; (2) falsely claiming that he was injured while performing his duty as an employee, in violation of 18 U.S.C. § 1001; and (3) theft of government property, in violation of 18 U.S.C. § 641. The district court sentenced Vargas to fifty-one months in prison, followed by three years of supervised release. The court also ordered him to pay $66,851.72 in restitution.

In imposing this sentence, the district court relied on a presentence investigation report ("PSR") that calculated Vargas's total offense level as 22 and his criminal history category as I. In calculating the total offense level, the PSR applied a base offense level of 6 under United States Sentencing Guidelines § 2B1.1(a)(2), and added 14 additional levels under § 2B1.1(b)(1)(H) because the intended loss exceeded $550,000.00,[2] and 2 additional points under § 3C1.1 because Vargas obstructed justice during the investigation of the incident and at trial.[3] Vargas timely appealed, challenging the district court's method of calculating the intended loss enhancement and the substantive reasonableness of the sentence.

---

[1] The form Vargas submitted is titled "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation."

[2] The PSR concluded that if Vargas continued to receive benefits until he reached 80 years of age, he would receive $850,438.27.

[3] The PSR noted that Vargas attempted to have colleagues conceal or destroy evidence related to the incident and provided false testimony at trial and during his PSR interview regarding the timeline of events.

No. 20-50029

## II. Standard of Review

We generally "review factual findings related to a district court's loss calculations under the Sentencing Guidelines for clear error and that court's calculation methodology de novo."[4] Vargas failed to object to the method of loss calculation, so our review is for plain error.[5] To establish plain error, Vargas must show that (1) the district court erred; (2) the error was clear and obvious; and (3) the error affected his substantial rights.[6] Should he make such showings, we would have the discretion to correct the error if a failure to do so would seriously affect the fairness, integrity, or public reputation of the proceeding.[7]

Challenges to the substantive reasonableness of a sentence are reviewed for abuse of discretion.[8]

## III. Analysis

On appeal, Vargas contends that (1) the district court erred procedurally in calculating the applicable guidelines range, and (2) the sentence is substantively unreasonable. We address each contention in turn.

## A. Guidelines Calculation

Vargas first contends that the district court erred in calculating his sentencing range under § 2B1.1, which sets forth the applicable guidelines for crimes involving fraud and deceit.[9] Under § 2B1.1(b), the applicable offense

---

[4] *United States v. Hearns*, 845 F.3d 641, 647 (5th Cir. 2017).

[5] *Puckett v. United States*, 556 U.S. 129, 134 (2009).

[6] *Id.* at 135.

[7] *Id.*

[8] *Gall v. United States*, 552 U.S. 38, 56 (2007).

[9] U.S. Sentencing Guidelines Manual § 2B1.1 (U.S. Sent'g Comm'n 2018) [hereinafter "U.S.S.G."].

level is subject to escalating enhancement depending on the amount of loss that resulted from the underlying offense.[10] As a "general rule," a "loss is the greater of actual loss or intended loss."[11] In cases involving government benefits, however, a "special rule" applies. It provides:

> Notwithstanding [the general rule], the following special rule[] shall be used  to assist in determining loss . . . .
>
> In a case involving government benefits (*e.g.*, grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be. For example, if the defendant was the intended recipient of food stamps having a value of $100 but fraudulently received food stamps having a value of $150, loss is $50.[12]

In adopting the PSR, the district court concluded that the loss attributable to Vargas's crime was $850,438.27—a sum representing the total amount of benefits that he would receive if he continued to receive compensation payments until the age of 80. Based on this intended loss, the district court applied a 14-level enhancement under § 2B1.1(B), which resulted in an advisory sentencing range of 41-51 months. On appeal, Vargas contends that the district court erred in calculating the amount of loss because it applied the general rule that "loss is the greater of actual loss or intended loss" rather than the government-benefits rule.

Our caselaw does not clearly explain the relationship between the general rule and the government-benefits rule. We recently noted in *United*

---

[10] *Id.* § 2B1.1(b).

[11] *Id.* cmt. n.3(A).

[12] *Id.* cmt. n.3(F).

*States v. Harris* that the government-benefits rule is "one of several special rules that supplant the default general rule whenever they apply."[13] However, the *Harris* court determined that the government-benefits rule was inapplicable to the set of facts before it, rendering such comments dicta. And, just three years earlier, we held in *United States v. Nelson* that, although "the correct loss calculation [in government-benefits cases] is 'the difference between the amount the defendant actually received and the amount he would have received absent the fraud,'" "[t]he intended loss analysis applies to [government-benefits] cases."[14] We have also stressed that "[t]he intention to divert funds from the Government for unintended uses qualifies the amounts as intended losses."[15] But, to complicate matters, despite *Nelson*'s reliance on the intended loss analysis, we have reversed district courts on multiple occasions for calculating the loss in government-benefits cases as involving the total value of benefits received rather than only those benefits *fraudulently* received, without reference to the intended loss.[16] We therefore decline to resolve the relationship between the general rule and the government-benefits rule today. Even if we assume that the district court

---

[13] 821 F.3d 589, 602 (5th Cir. 2016); *see also id.* at 603 (noting that the government-benefits rule "obviate[s] the general rule").

[14] 732 F.3d 504, 521 (5th Cir. 2013) (quoting *United States v. Harms*, 442 F.3d 367, 380 (5th Cir. 2006)).

[15] *Id.* (cleaned up) (quoting *United States v. Dowl*, 619 F.3d 494, 502 (5th Cir. 2010)).

[16] *See, e.g.*, *Harms*, 442 F.3d at 379 (holding that the applicable loss "should not include any benefits to which [the defendant] would have been entitled absent fraud"); *United States v. Lopez*, 486 F. App'x 461, 467 (5th Cir. 2012) (unpublished) (holding that the district court should have excluded from the total value of government contracts the portion of funds that, while fraudulently solicited, reached intended beneficiaries). However, there is good reason for these reversals: In *Harms* and *Lopez*, the district courts never engaged in an analysis of intended loss, so the only issue on appeal was the propriety of the district courts' calculation of actual loss.

erred in its application of the Guidelines, we are not persuaded that the error was "clear and obvious."[17]

In the absence of clear guidance, the district court did not clearly and obviously err in applying the general rule in this case.[18] In determining the intended loss, the district court adopted the facts detailed in the PSR, which are "considered reliable evidence for sentencing purposes,"[19] at least in the absence of "relevant affidavits or other evidence . . . submitted to rebut the information" contained in the PSR.[20] Here, the facts in the PSR were derived from the trial testimony of an Air Force human resources specialist, Luisa Garcia, who explained that Vargas stood to receive more than $850,000 in benefits over the course of his life. And the sentencing judge presided over the trial, so he was "in a unique position to assess the evidence" that entitles his determination to "appropriate deference."[21] In addition to Garcia's testimony, the district court considered the nature and severity of Vargas's injury, which included the permanent amputation of his thumb, and the fact that, when Vargas filed his compensation claim form, he checked a box indicating that he sought "compensation for wage loss if disability for work continues beyond 45 days."

---

[17] *United States v. Wikkerink*, 841 F.3d 327, 331 (5th Cir. 2016).

[18] *United States v. Rodriguez-Parra*, 581 F.3d 227, 230–31 (5th Cir. 2009) (concluding that a "claim of plain error fail[ed] at the second prong" where resolution of the issue required "a careful parsing of all the relevant authorities, including the sentencing guidelines and applicable decisions" and "the result [was] reached only by traversing a somewhat tortuous path").

[19] *United States v. Clark*, 139 F.3d 485, 490 (5th Cir. 1998).

[20] *United States v. Jefferson*, 258 F.3d 405, 413 (5th Cir. 2001) (quoting *United States v. Vital*, 68 F.3d 114, 120 (5th Cir. 1995)).

[21] *United States v. Delgado*, 984 F.3d 435, 453 (5th Cir. 2021).

No. 20-50029

More significantly, Garcia's trial testimony, which formed the basis of the specific loss amount adopted by the PSR and district court, went entirely unchallenged. Counsel for Vargas declined to cross examine Garcia about her methodology and failed to introduce any evidence to refute the basis for the calculation of the intended loss. Neither did counsel probe how much Vargas received in monthly payments, whether compensation claims are routinely approved, how securing additional employment would affect the amount of compensation, or what Vargas understood about the compensation system at the time he filed his claim. To make matters worse, Vargas's counsel not only declined to object to the PSR—he also stated affirmatively in a sentencing memorandum that "the Presentence Investigation Report properly calculates Vargas' total offense level as a 22." Based on the unrefuted evidence and Vargas's affirmative representation that the intended loss was correctly calculated, it was not clear and obvious error for the court to infer that Vargas intended to receive benefits to which he was not legally entitled for as long as he could.[22]

### B. Substantive Reasonableness of Sentence

Vargas also contends that his top-of-the-guidelines sentence was substantively unreasonable in light of the applicable sentencing factors set forth in 18 U.S.C. § 3553(a). Within-guidelines-range sentences such as Vargas's are entitled to a presumption of reasonableness.[23] This presumption can be rebutted with evidence that the sentence: "(1) does not account for a

---

[22] As the Seventh Circuit put it in a similar case involving disability insurance fraud, "[the defendant] set out to take the insurers for all they were worth, and that meant benefits through age 65. What would have induced him to disclaim benefits earlier?" *United States v. Rettenberger*, 344 F.3d 702, 708 (7th Cir. 2003); *see also United States v. Killen*, 761 F.3d 945, 946–47 (8th Cir. 2014) (holding that the plaintiff intended to fraudulently receive social security benefits until age 65).

[23] *United States v. Simpson*, 796 F.3d 548, 557 (5th Cir. 2015).

factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[24] When, as here, a defendant advocates to the district court for a specific sentence, he preserves his appellate claim that the length of the sentence imposed was unreasonable.[25]

On appeal, Vargas maintains that the sentence imposed (1) failed to account sufficiently for his history and background, (2) invites unwanted sentencing disparities, and (3) grossly overstates his culpability in the offense. These assertions are unavailing. In imposing this sentence, the district court had the benefit of personally recalling trial testimony, reviewing Vargas's sentencing memorandum, and hearing Vargas and his attorney discuss his "relative lack of criminal history," record of military service, personal remorse for actions taken, desire to return to work, and familial support. The district court was well aware of Vargas's personal history and background when selecting his sentence. The fact that the judge declined to find those factors persuasive enough to warrant a reduced sentence does not mean that he failed to sufficiently consider those factors under § 3553(a)(1). The district court also sufficiently considered the need for the sentence imposed under § 3553(a)(2), citing the serious nature of the underlying offense and Vargas's obstruction of justice as key justifications for the guidelines sentence. And any sentencing disparities between Vargas and others convicted of the same crime are explained by the specific facts related to the instant offense.

Lastly, the sentence imposed does not overstate Vargas's culpability in the underlying offense because, as explained above, the intended loss enhancement was not plainly erroneous. For all of these reasons, Vargas has

---

[24] *Id.* at 558 (quoting *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013)).

[25] *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020).

No. 20-50029

failed to rebut the presumption of reasonableness that attaches to his within-guidelines-range sentence.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

No. 20-50029

Jennifer Walker Elrod, *Circuit Judge*, concurring only in the judgment:

An error that the defendant affirmatively ratified in the district court does not justify reversal on plain-error review because it does not seriously affect the fairness, integrity, or public reputation of the trial. *See, e.g.*, *United States v. Duque-Hernandez*, 710 F.3d 296, 298 (5th Cir. 2013). As the majority opinion notes, Vargas's counsel affirmatively stated that the Presentence Investigation Report calculated his total offense level correctly. Therefore, this court need not exercise its discretion to correct even a "clear and obvious" error. That should be enough to decide this case.

Unfortunately, in arriving at the same conclusion, the majority opinion adds confusion to our government benefits rule caselaw. In my view, the government-benefits rule "supplant[s] the default general rule whenever [it] appl[ies]." *United States v. Harris*, 821 F.3d 589, 602 (5th Cir. 2016); *see also United States v. Harms*, 442 F.3d 367, 379 (5th Cir. 2006); *United States v. Lopez*, 486 F. App'x 461, 467 (5th Cir. 2012); *cf. United States v. Ainabe*, 938 F.3d 685, 692 (5th Cir. 2019) (applying a specific rule applicable to "Federal health care offense involving a Government health care program," which is also listed in U.S.S.G. § 2B1.1 cmt. n.3(F), instead of the general rule), *cert. denied*, 141 S. Ct. 259 (2020); *accord United States v. Tupone*, 442 F.3d 145, 154 n.7 (3d Cir. 2006) (indicating that "U.S.S.G. § 2B1.1 app. note 3(F) *supersedes* subdivision (A) of Note 3 in government benefits cases and provides the relevant definition of 'loss' in such cases" (emphasis added)).

Assuming *arguendo* that the general rule of U.S.S.G. § 2B1.1(b) n.3(A) did apply here, deploying *intended*—rather than *actual*—loss analysis surely constitutes "clear and obvious" error. The government did not carry its burden to prove intended loss because it rested its case on two casual—and "purely speculative"—assumptions: first, that Vargas would not seek

reemployment; and second, that Vargas might have lived (and collected benefits) to the ripe old age of eighty.  Such speculative reasoning is not sufficient to prove intended loss.  *See United States v. Roussel*, 705 F.3d 184, 201 (5th Cir. 2013); *see also United States v. Nelson*, 732 F.3d 504, 521–22 (5th Cir. 2013).

For these reasons, I respectfully concur only in the judgment.