# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 17, 2023

Lyle W. Cayce
Clerk

No. 22-10451
Summary Calendar

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

FELICIA MUNOZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:21-CR-43

Before WIENER, ELROD, and ENGELHARDT, *Circuit Judges*.

JENNIFER WALKER ELROD, *Circuit Judge*:

Appellant Felicia Munoz was a caretaker for a retired Texas Department of Public Safety trooper and his ailing wife (known pseudonymously as R.R. and K.R.). Over the course of Munoz's employment, she and her boyfriend stole hundreds of firearms, eight silencers, a wedding ring, two tennis bracelets, earrings, and two other rings from the elderly couple. Munoz eventually pleaded guilty to possession of stolen firearms. 18 U.S.C. § 922(j). In connection with her plea agreement, she waived the right to appeal except as to a sentence in excess of the statutory maximum. The district court

No. 22-10451

sentenced Munoz to 108 months' incarceration and ordered her to pay restitution in the amount of $75,605.97 to compensate for the stolen firearms. She appealed the restitution order.

The questions presented are whether Munoz's appeal waiver bars her from challenging the restitution award and, if not, whether the district court erred in calculating the proper amount of restitution. We agree with Munoz that her appeal waiver does not prevent us from considering the merits of her appeal. But her substantive arguments fail. The district court committed no error in ordering restitution in the amount of $75,605.97. Accordingly, that judgment is AFFIRMED.

I

As introduced above, R.R. worked as a DPS trooper for his living. In the words of his daughter, S.R., he was an avid gun collector and their family often enjoyed firearm sports together. Upon R.R.'s retirement, he and K.R. began to need assistance in their day-to-day life. Specifically, R.R. developed diabetes and K.R. was diagnosed with brain cancer. When their health continued to decline, they hired Munoz as a caretaker.

Munoz used her employment to steal from the couple. She took pictures of R.R. and K.R.'s possessions and sent them to her boyfriend, Albert Guzman. When Munoz took the couple to doctor appointments, she would text Guzman to alert him that then was a good time to steal whatever possessions she had previously identified. All told, Munoz and Guzman stole 130 firearms, eight silencers, a wedding ring, two tennis bracelets, earrings, and two other rings. They sold many of the stolen firearms to a gun shop in San Antonio. And they sold others "on the street."

Law enforcement officers eventually discovered the scheme. Munoz was charged with possession of stolen firearms, aiding and abetting the possession of stolen firearms, and possession of unregistered firearms. She then

entered into a plea agreement whereby she agreed to plead guilty to the first charge in exchange for the Government's dropping the other two charges. Munoz also agreed to waive her entitlement to appeal, but reserved the right to, among other things, "bring a direct appeal of . . . a sentence exceeding the statutory maximum punishment."

In connection with the sentencing proceedings, the probation office inventoried the stolen guns. Law enforcement recovered 57 of the 130 firearms that Munoz and Guzman stole. For the other seventy-three, the probation office listed the make, model, serial number, and an estimate of the value. R.R. and K.R. were unable to assist with the estimates because they passed in 2021. And so the probation office relied on S.R. to approximate the value of each firearm. According to the pre-sentence report, S.R. calculated those values using R.R.'s detailed records of the firearm collection, her experience with firearms generally, and her familiarity with the particular guns at issue. She also accounted for the fact that "many of the firearms were family heirlooms" and thus irreplaceable. Relying on S.R.'s estimates, the probation office calculated the value of the lost firearms as $79,039.

Munoz objected to the probation office's calculation. She introduced a competing estimate of the firearms' value—conducted by James Hill, the owner of a gun range in Abilene. Hill offered two estimates: one using the retail (or replacement) price of the lost firearms, and one using the market value, which reflected a discounted price due to the guns' used condition. He concluded that the stolen firearms were worth $70,716 according to retail value and $52,540 according to market value. Hill candidly noted that he had not examined the weapons and could not testify as to their precise condition. Munoz requested that the district court order restitution according to the discounted market value.

The Government then amended its requested restitution award in two

No. 22-10451

respects.  First, it agreed to rely on Hill's affidavit because S.R. declined to testify.  But it contended that the district court should use retail value instead of market value.  This reduced the sum to $69,816.  (The Government had recovered one additional firearm, worth $900, so it subtracted that amount from its request.)  Second, the Government explained that S.R. had elected to abandon the eight silencers because she could not take possession of them without opening a probate proceeding and pursuing them in court.  For this reason, the Government asserted, Munoz should pay restitution for the replacement value of the silencers, which was calculated at $5,789.97.  The Government therefore requested a revised restitution amount of $75,605.97.

At the sentencing hearing, Munoz renewed her objection that the district court should use market value instead of replacement value to calculate the restitution award.  (Notably, she did not object to the silencers' inclusion in the calculation.)  The district court overruled the objection—finding that "[t]he firearms here held unique, intangible, and sentimental value to the victim, so the fair market value inadequately measures the harm."  The district court thus ordered restitution in the amount of $75,605.97.

II

Munoz presents two issues on appeal.  First, she maintains that the district court erred by calculating the restitution award using retail value, rather than market value.  Second, she argues that the Government failed to prove that she proximately caused financial loss relating to the silencers.  The Government moved to dismiss, asserting that Munoz's appeal waiver barred her from pursuing the two arguments described above.  The motion was denied, but the Government maintains its position at the merits stage.

A

We first consider whether Munoz's appeal waiver applies in these circumstances.  As an initial matter, it is clear that the right to appeal is statutory

in nature and can be waived. *United States v. Meredith*, 52 F.4th 984, 986 (5th Cir. 2022). In assessing whether an appeal waiver executed in connection with a plea agreement applies to a particular appeal, we ask if "the waiver was knowing and voluntary," *United States v. Alfred*, 60 F.4th 979, 981–82 (5th Cir. 2023), and if it "applies to the circumstances at hand, based on the plain language of the agreement." *Id.* at 982 (quoting *United States v. Purser*, 747 F.3d 284, 289 n.10 (5th Cir. 2014)). Munoz does not dispute that her waiver was knowing and voluntary. Instead, she argues that her plea agreement does not apply to the issues she raises here. As in many plea agreements, Munoz reserved the right to appeal a sentence in excess of the statutory maximum. The question, then, is whether the substance of Munoz's issues challenge the restitution order as exceeding the statutory maximum.[1]

This court's precedents recognize several ways in which a restitution order can exceed the statutory maximum. Among other things, such an order cannot exceed the victim's loss. *See, e.g.*, *United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 752 (5th Cir. 2012). Also, the Government bears the burden to prove that the defendant's conduct proximately caused the victim damages in the amount provided by the restitution award. *See, e.g.*, *United States v. Winchel*, 896 F.3d 387, 398 (5th Cir. 2018).

Munoz's challenges are consistent with these limited exceptions to her appeal waiver. First, she contests the district court's finding that the

---

[1] We would ask the same question even if Munoz had not expressly reserved the right to assert this issue on appeal. The parties agree that the Mandatory Victims Restitution Act applies to the offense for which Munoz was convicted. We have interpreted the MVRA (and other restitution statutes) to place various restrictions on restitution orders. *See United States v. Kim*, 988 F.3d 803, 809–10 (5th Cir. 2021); *United States v. Oliver*, No. 21-11173, 2023 WL 1529730, at *1 (5th Cir. Feb. 3, 2023) (discussing the "well-established statutory limits on restitution awards"). A criminal defendant can raise these issues on appeal even if the plea agreement lacks an express reservation of that right. *Kim*, 988 F.3d at 809; *see also United States v. Leal*, 933 F.3d 426, 431–32 (5th Cir. 2019).

firearms she stole are unique, and therefore warrant the use of replacement value to calculate the restitution award. This objection goes to the amount of the loss Munoz caused R.R. and K.R., and in turn caused S.R. If Munoz is correct, the Government's evidence does not show that she proximately caused damages in the amount of $75,605.97. Said another way, if R.R. and K.R.'s firearm collection is not unique in nature, a restitution award of $75,605.97 would exceed the victims' loss. Whether it be six of one or half a dozen of the other, such an award would violate the statutory maximum. *See Winchel*, 896 F.3d at 398; *Chem. & Metal Indus., Inc.*, 677 F.3d at 752. The same is true of the argument that Munoz did not proximately cause S.R. to lose the value of the eight silencers. *See Kim*, 988 F.3d at 812.

To be sure, not every disagreement about the methods used to calculate restitution will allow a criminal defendant to avoid her appeal waiver. As this court has recognized, an appeal waiver may not be circumvented merely because a defendant invokes the magic words "in excess of the statutory maximum." *See Meredith*, 52 F.4th at 987 (explaining that a criminal defendant may not "use the statutory-maximum boilerplate as an appeal-authorizing escape hatch"). For that reason, we have rejected arguments that in substance merely disagreed with the district court's calculation of the restitution award.

In *United States v. Oliver*, for instance, the defendant objected to the district court's use of the defendant's gain as evidence to approximate the victims' loss. 2023 WL 1529730, at *1–2. Oliver framed this issue in terms of "exceeding the statutory maximum," but he did not contest that the victim had suffered damages of at least the amount of restitution ordered by the district court, or that he had proximately caused at least that much loss. The objection therefore reduced to a disagreement on *how* the district court calculated restitution—and that is insufficient to invoke one of the limited exceptions to an appeal waiver.

No. 22-10451

But here, Munoz raises a bona fide question as to whether the restitution ordered by the district court exceeds the victim's loss or whether the Government failed to prove that Munoz proximately caused damages in that amount. She may therefore pursue those issues notwithstanding the fact that she otherwise waived her right to appeal.

B

And so we turn to the merits. Recall that Munoz presents two independent arguments: that the district court erred in using retail value to calculate restitution, and that the Government failed to prove that she proximately caused S.R. to lose the value of the eight silencers.

1

We consider *de novo* the legality of a restitution award and the method used to calculate loss. *See United States v. Isiwele*, 635 F.3d 196, 202 (5th Cir. 2011). But we review the factual findings supporting the restitution order for clear error. *See United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012).

As an initial matter, we find no clear error in the district court's determination that R.R. and K.R.'s gun collection was unique in nature. The district court considered the question at length, ultimately finding that "the firearms here held unique, intangible, and sentimental value to the victim." We cannot say that this finding leaves us with the "definite and firm conviction that a mistake has been committed." *Sharma*, 703 F.3d at 322.

That holding in mind, we conclude that the district court did not err in choosing to use replacement value to calculate the amount of restitution. This court and several of our sister circuits have recognized that the MVRA is silent on how restitution is to be calculated, and "contemplate[s] the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution calculation in a given case." *United States v.*

*Gunselman*, 643 F. Appx. 348, 356 (5th Cir. 2016) (quoting *United States v. Boccagna*, 450 F.3d 107, 114 (2d Cir. 2006)). And so although the fair market value of property will ordinarily compensate a victim for her loss, that metric may at times "inadequately measure" the relevant harm. *Id.* (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)(i)). In such a case, replacement cost may be "best suited to make [the] victims whole." *Id.* (collecting cases). Having determined that the firearm collection was unique in nature, the district court committed no legal error by calculating the amount of restitution by using the replacement value instead of the fair market value.

2

We now turn to the question of whether the Government proved that Munoz proximately caused S.R. to lose the value of the silencers S.R. elected to abandon rather than pursue in probate proceedings. At the outset, however, we emphasize that Munoz did not raise this objection in the district court. In fact, the record is devoid of any objection to including the silencers in the restitution calculation. Thus, we review for plain error only. *United States v. Melendez*, 57 F.4th 505, 507 (5th Cir. 2023).[2]

To demonstrate plain error, Munoz must show "(1) the district court erred; (2) the error was clear and obvious; and (3) the error affected [her] substantial rights." *Id.* (quoting *United States v. Vargas*, 21 F.4th 332, 334 (5th Cir. 2021)). And even then, we have discretion to decline to correct the error if our doing so would not "seriously affect the fairness, integrity, or public reputation of the proceeding." *Id.* (quoting *Vargas*, 21 F.4th at 334).

Assuming *arguendo* that the district court erred, we cannot say that the

---

[2] The Government argued for plain-error review for this issue in its brief. Munoz neither addressed this topic in her opening brief nor filed a reply brief. As such, it is uncontested that this standard of review applies.

No. 22-10451

error was clear and obvious. Munoz does not dispute that she stole the eight silencers, or that her actions put S.R. in a position to choose whether to abandon them or initiate probate proceedings to claim them. Instead, she argues that S.R.'s actions sever the chain of causation with respect to her stealing the silencers, or at least sufficiently dilutes it such that she cannot be said to have proximately caused S.R.'s loss. The Government responds that it would be impracticable for S.R. to claim the silencers. Gov. Br. at 24–25 (quoting 18 U.S.C. § 3663A(b)(1)(B)) (the defendant must pay the value of the property "if return of the property under subparagraph (A) is impossible, impracticable, or inadequate"). Supposing the Government failed to carry its burden to prove that Munoz proximately caused harm relating to the silencers, and supposing that the district court erred in including the value of the silencers in the restitution calculation, we conclude that any such error was not clear and obvious. Munoz thus fails to demonstrate plain error.

\* \* \*

The judgment of the district court is AFFIRMED. *Contra* the Government's assertion, Munoz's plea waiver does not bar her from pursuing her issues on appeal. That is so because the substance of her arguments call into question whether the restitution award exceeds the statutory maximum. But those arguments fail on the merits. The district court did not err in ordering restitution in the amount of $75,605.97.