# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2023

Lyle W. Cayce
Clerk

No. 22-10451
Summary Calendar

───────────

United States of America,

*Plaintiff—Appellee*,

*versus*

Felicia Munoz,

*Defendant—Appellant*.

───────────

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:21-CR-43

───────────

Before Wiener, Elrod, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Our prior panel opinion, *United States v. Munoz*, 65 F.4th 274 (5th Cir. 2023), is WITHDRAWN. The following opinion is SUBSTITUTED:

Appellant Felicia Munoz was a caretaker for a retired Texas Department of Public Safety trooper and his ailing wife (known pseudonymously as R.R. and K.R.). Over the course of Munoz's employment, she and her

───────────

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

boyfriend stole hundreds of firearms, eight silencers, a wedding ring, two tennis bracelets, earrings, and two other rings from the elderly couple. Munoz eventually pleaded guilty to possession of stolen firearms. 18 U.S.C. § 922(j). In connection with her plea agreement, she waived the right to appeal except as to a sentence in excess of the statutory maximum. The district court sentenced Munoz to 108 months' incarceration and ordered her to pay restitution in the amount of $75,605.97 to compensate for the stolen firearms. She appealed the restitution order.

The questions presented are whether Munoz's appeal waiver bars her from challenging the restitution award and, if not, whether the district court erred in calculating the proper amount of restitution. Assuming *arguendo* that the appeal waiver does not bar her challenge, her substantive arguments fail. The district court committed no error in ordering restitution in the amount of $75,605.97. Accordingly, that judgment is AFFIRMED.

I

As introduced above, R.R. worked as a DPS trooper for his living. In the words of his daughter, S.R., he was an avid gun collector and their family often enjoyed firearm sports together. Upon R.R.'s retirement, he and K.R. began to need assistance in their day-to-day life. Specifically, R.R. developed diabetes and K.R. was diagnosed with brain cancer. When their health continued to decline, they hired Munoz as a caretaker.

Munoz used her employment to steal from the couple. She took pictures of R.R. and K.R.'s possessions and sent them to her boyfriend, Albert Guzman. When Munoz took the couple to doctor appointments, she would text Guzman to alert him that then was a good time to steal whatever possessions she had previously identified. As noted above, Munoz and Guzman stole 130 firearms, eight silencers, a wedding ring, two tennis bracelets, earrings, and two other rings. They sold many of the stolen firearms to a gun

shop in San Antonio. And they sold others "on the street."

Law enforcement officers eventually discovered the scheme. Munoz was charged with possession of stolen firearms, aiding and abetting the possession of stolen firearms, and possession of unregistered firearms. She then entered into a plea agreement whereby she agreed to plead guilty to the first charge in exchange for the Government's dropping the other two charges. Munoz also agreed to waive her entitlement to appeal, but reserved the right to, among other things, "bring a direct appeal of . . . a sentence exceeding the statutory maximum punishment."

In connection with the sentencing proceedings, the probation office inventoried the stolen guns. Law enforcement recovered 57 of the 130 firearms that Munoz and Guzman stole. For the other seventy-three, the probation office listed the make, model, serial number, and an estimate of the value. R.R. and K.R. were unable to assist with the estimates because they had died in 2021. And so the probation office relied on S.R. to approximate the value of each firearm. According to the pre-sentence report, S.R. calculated those values using R.R.'s detailed records of the firearm collection, her experience with firearms generally, and her familiarity with the particular guns at issue. She also accounted for the fact that "many of the firearms were family heirlooms" and thus irreplaceable. Relying on S.R.'s estimates, the probation office calculated the value of the lost firearms as $79,039.

Munoz objected to the probation office's calculation. She introduced a competing estimate of the firearms' value—conducted by James Hill, the owner of a gun range in Abilene. Hill offered two estimates: one using the retail (or replacement) price of the lost firearms, and one using the market value, which reflected a discounted price due to the guns' used condition. He concluded that the stolen firearms were worth $70,716 according to retail value and $52,540 according to market value. Hill candidly noted that he had

not examined the weapons and could not testify as to their precise condition. Munoz requested that the district court order restitution according to the discounted market value.

The Government then amended its requested restitution award in two respects. First, it agreed to rely on Hill's affidavit because S.R. declined to testify. But it contended that the district court should use retail value instead of market value. This reduced the sum to $69,816. (The Government had recovered one additional firearm, worth $900, so it subtracted that amount from its request.) Second, the Government explained that S.R. had elected to abandon the eight silencers because she could not take possession of them without opening a probate proceeding and pursuing them in court. For this reason, the Government asserted, Munoz should pay restitution for the replacement value of the silencers, which was calculated at $5,789.97. The Government therefore requested a revised restitution amount of $75,605.97.

At the sentencing hearing, Munoz renewed her objection that the district court should use market value instead of replacement value to calculate the restitution award. (Notably, she did not object to the silencers' inclusion in the calculation.) The district court overruled the objection—finding that "[t]he firearms here held unique, intangible, and sentimental value to the victim, so the fair market value inadequately measures the harm." The district court thus ordered restitution in the amount of $75,605.97.

## II

Munoz presents two issues on appeal. First, she maintains that the district court erred by calculating the restitution award using retail value, rather than market value. Second, she argues that the Government failed to prove that she proximately caused financial loss relating to the silencers. Because appeal waivers do not deprive us of jurisdiction, we assume *arguendo* that consideration of these claims is not precluded by the waiver, and we

conclude that they lack merit. *See United States v. Madrid*, 978 F.3d 201 (5th Cir. 2020) (holding that appeal waivers are not jurisdictional).

A

We consider *de novo* the legality of a restitution award and the method used to calculate loss. *See United States v. Isiwele*, 635 F.3d 196, 202 (5th Cir. 2011). But we review the factual findings supporting the restitution order for clear error. *See United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012).

As an initial matter, we perceive no clear error in the district court's determination that R.R. and K.R.'s gun collection was unique in nature. The district court considered the question at length, ultimately concluding that "the firearms here held unique, intangible, and sentimental value to the victim." We cannot say that this finding leaves us with the "definite and firm conviction that a mistake has been committed." *Sharma*, 703 F.3d at 322.

With that holding in mind, we conclude that the district court did not err in choosing to use the guns' replacement values to calculate the amount of restitution. This court and several other circuits have recognized that the MVRA is silent on how restitution is to be calculated, and "contemplate[s] the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution calculation in a given case." *United States v. Gunselman*, 643 F. Appx. 348, 356 (5th Cir. 2016) (quoting *United States v. Boccagna*, 450 F.3d 107, 114 (2d Cir. 2006)). Although the fair market value of property will ordinarily compensate a victim for his or her loss, that metric may at times "inadequately measure" the relevant harm. *Id.* (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)(i)). In such a case, replacement cost may be "best suited to make [the] victims whole." *Id.* (collecting cases). Having properly determined that the firearm collection was unique, the district court committed no legal error in calculating the amount of restitution by using the replacement value instead of the fair market value.

No. 22-10451

B

We now turn to the question whether the Government proved that Munoz proximately caused S.R. to lose the value of the silencers that S.R. elected to abandon rather than pursue in probate proceedings. At the outset, however, we emphasize that Munoz did not raise this objection in the district court. In fact, the record is devoid of any objection to including the silencers in the restitution calculation. Thus, we review for plain error only. *United States v. Melendez*, 57 F.4th 505, 507 (5th Cir. 2023).[1]

To demonstrate plain error, Munoz must show "(1) the district court erred; (2) the error was clear and obvious; and (3) the error affected [her] substantial rights." *Id.* (quoting *United States v. Vargas*, 21 F.4th 332, 334 (5th Cir. 2021)). And even then, we have discretion to decline to correct the error if our doing so would not "seriously affect the fairness, integrity, or public reputation of the proceeding." *Id.* (quoting *Vargas*, 21 F.4th at 334).

Assuming *arguendo* that the district court erred, we cannot say that the error was clear and obvious. Munoz does not dispute that she stole the eight silencers, or that her actions put S.R. in a position to choose whether to abandon them or initiate probate proceedings to claim them. Instead, Munoz argues that S.R.'s actions sever the chain of causation with respect to Munoz's stealing the silencers, or at least sufficiently dilutes it such that she cannot be said to have proximately caused S.R.'s loss. The Government responds that it would be impracticable for S.R. to claim the silencers. Gov. Br. at 24–25 (quoting 18 U.S.C. § 3663A(b)(1)(B)) (the defendant must pay the value of the property "if return of the property under subparagraph (A) is impossible,

---

[1] The Government argued for plain-error review for this issue in its brief. Munoz neither addressed this topic in her opening brief nor filed a reply brief. As such, it is uncontested that this standard of review applies.

No. 22-10451

impracticable, or inadequate"). Assuming the Government failed to carry its burden to prove that Munoz proximately caused harm relating to the silencers, and assuming that the district court erred in including the value of the silencers in the restitution calculation, we conclude that any such error was not clear and obvious. Munoz thus fails to demonstrate plain error.

\*     \*     \*

Having considered Munoz's arguments on the merits, we conclude that the district court did not err in ordering restitution in the amount of $75,605.97. Accordingly, the judgment of the district court is AFFIRMED.